## The Toledo Savings Bank v. W. F. Johnston, Appellant.

**Practice:** TRUSTS. Defendant was a member of the investment committee of a bank. He sold a stock to a firm, took a mortgage upon it and additions for substantially the whole purchase price, and did not disclose this to the bank. The firm became largely indebted to the bank. When suit was about to be begun to recover the debt, said mortgage was recorded. Defendant, subsequently, took the stock and canceled his mortgage. The bank began a suit in equity to subject the stock to its attachment of it, to declare the mortgage void, to restrain making a claim under it, for an accounting and *for a judgment against defendant for all balance still due from the firm. Held,* equity has jurisdiction. There is no misjoinder of causes, there should be no transfer to the law calendar, and the facts warrant all the relief asked.

**Practice:** GARNISHMENT. The garnishment of one in possession of a stock, being dismissed, does not bar a subsequent attachment of the stock in the same action, and such attachment is not a conversion.

KINNE, J., took no part.

*Appeal from Tama District Court.*—Hon. John R. Caldwell, Judge.

### Friday, April 5, 1895.

Suit in equity to charge the defendant, as director and member of the investment committee in plaintiff bank, for fraud, misconduct, negligence, and gross carelessness in the management of his trust; for an accounting; for a decree declaring an attachment levied

by plaintiff upon the goods of a copartnership doing
business under the name of W. S. Johnston & Co. supe-
rior and prior to the claims of the defendant thereto by
virtue of holding a chattel mortgage thereon; for an
order barring and estopping defendant from setting
up any claim or title to the goods so levied upon; and
for general equitable relief.   The district court granted
plaintiff the relief prayed, and defendant appeals.—
*Affirmed.*

*W. H. Stivers* and *J. W. Willett* for appellant.

*Charles A. Clark* and *Struble & Stiger* for appellee.

Deemer, J.—Plaintiff is a corporation organized
under the laws of this state, and doing business as a
savings bank in the city of Toledo.   Defendant has for
many years been a director of the bank, and a
member of its investment committee.   As such,
it was his duty to examine the loans made by the
bank, and report to the other directors upon the pro-
priety and safety thereof.   In the year 1879, and while
acting in the above capacity, he was also the owner of
a general stock of merchandise.   In April of that year
he sold this stock to the firm of W. S. Johnston & Co.,—
a firm composed of W. S. Johnston, his brother, and
one John A. Owen.   The sale was wholly on time, the
firm of W. S. Johnston & Co. executing its notes to
defendant for the purchase price, which were secured
by a mortgage upon the entire stock of goods, and all
additions thereto.   This chattel mortgage was never
placed of record, nor was its existence at any time dis-
closed to others.   In 1881 Owen retired from the firm;
Wesley Johnston, another brother of the defendant
taking his place, and assuming his share of the
purchase price of the stock.   Owen was released,
and his name was erased from the notes and the

chattel mortgage, by agreement of all parties. Defendant, however, still held the notes and mortgage with the name of W. S. Johnston thereon. The new firm of W. S. Johnston & Co., composed of the two brothers, never was responsible for its debts, and neither of the partners ever put any considerable money into the business. This fact was well known to the defendant. Upon its organization, the new firm commenced doing business with the plaintiff bank, and continued with it, in a business way, until about February, 1892. It made large overdrafts from time to time, which were merged into notes, which were often renewed, and, at the time it quit doing business, was indebted to the bank in the sum of more than four thousand five hundred dollars. The defendant was aware at all times of these transactions with the bank, and frequently, in his official capacity, as director and member of the committee aforesaid, approved of the loans made; but he never at any time disclosed to the bank, or to any of its officers, the fact that W. S. Johnston & Co. were indebted to him for the full value of their stock, or that he held a mortgage thereon to secure the purchase price. On the contrary, he allowed the firm to appear to the bank and its officers as solvent and responsible, by reason of being apparently full and absolute owners of the stock of merchandise, free and clear of all liens. In 1891 defendant took a new mortgage upon the stock of goods to secure the purchase price thereof, but this he withheld from the record, and concealed from the bank. In February, 1892, the bank brought suit to collect the amount owing it from W. S. Johnston & Co. Defendant, learning that this suit was to be commenced, placed his chattel mortgage upon record the day before it was instituted, and afterward, by virtue of an arrangement between

him and his brothers, took the whole stock in satis-
faction of his claim, and delivered up and cancelled the
notes he held against the firm. Plaintiff afterward
attached the stock of goods, caused it to be sold as
perishable property, and applied the proceeds, less
costs, upon its claim against the firm. After making
this credit, there still remained due the bank the sum
of about one thousand three hundred dollars. Defend-
ant still asserted his right to the possession of the
goods, and was threatening to commence suit against
plaintiff for the conversion thereof, when plaintiff
brought this suit in equity, praying for a decree declar-
ing that the stock of goods was subject to its attach-
ment; that defendant's chattel mortgage was and is
fraudulent and void, as against it; that defendant be
enjoined from asserting his mortgage against plaintiff,
or from bringing an action at law against it,—also, ask-
ing an accounting and a personal judgment against
defendant for the balance due it from the firm of
Johnston & Co., which it alleges it lost through negli-
gence, fraud, and breach of duty and of trust of the
defendant. The defendant, in addition to other defenses,
interposed a counterclaim for the value of the goods
taken by plaintiff.

I. The defendant filed a motion to strike from the
petition all that portion thereof which seeks to recover
damages for his alleged negligence as a director and
member of the investment committee, claiming
that there was a misjoinder of causes of action;
that there was improperly joined a suit in equity
to set aside a mortgage and sale thereunder, and for an
accounting, with an action at law for negligence and
mismanagement, which causes cannot be prosecuted
by the same kind of proceedings. This motion being
overruled, defendant thereupon filed a motion to
transfer the cause to the law calendar for trial

to a jury. This was overruled, and to each of these rulings an exception was taken. It is now insisted that these rulings, and particularly the first one, were erroneous. And this presents the first question in the case. That plaintiff might have prosecuted an action at law against the defendant for negligently, carelessly, and fraudulently performing his duties as a director of the bank and a member of its investment committee, and recovered a money judgment may be conceded, but it does not follow that it was compelled to select that remedy. Our statute provides that "the plaintiff may prosecute his action by equitable proceedings in all cases where courts of equity, before the adoption of this Code, had jurisdiction; and must so proceed in all cases where jurisdiction was exclusive." Code, section 2508. Before the adoption of the Code, courts of law and of chancery had concurrent jurisdiction over many causes of action, and plaintiff might elect in which forum to proceed. It seems to us that the cause of action set forth in plaintiff's petition is one of those which, before the adoption of our Code, was cognizable either in law or equity, as plaintiff might elect. Defendant is sought to be charged, as a trustee, for negligence or breach of duty in his fiduciary capacity, and we understand it to be unquestioned doctrine that he may be so charged in a court of equity. Furthermore, the petition not only presents a cause of action for breach of duty, but also asks an accounting in order to determine the exact extent of defendant's liability. This involves an investigation into the validity of defendant's mortgage, the amount of money received by plaintiff under its attachment, and many other matters which courts of equity have made their special care. If it were true, however, that plaintiff sought nothing but a money judgment, this would not necessarily be determinative of the

question, for courts of equity have ever made it their duty to investigate the conduct of trustees or others occupying fiduciary relations, and to afford relief by means of a money judgment. For any willful breach of his trust or misapplication of the corporate funds, or for any gross neglect of or inattention to his official duties, a director is responsible to the corporation, either at law or in equity, for he is an agent or trustee. This doctrine was announced by Lord Hardwicke in the leading English case of *Charitable Corporation v. Sutton*, 2 Atk. 400, and has been followed almost universally in this country. See 1 Beach, Priv. Corp. section 255; 1 Morawetz Corp. section 550; 1 Cook, Stock & Stockholders, section 701; Boone, Banking, section 95; 3 Pomeroy. Eq. Jur. sections 1094-1088; *Mining Co. v. Ryan* (Minn.), 44 N. W. Rep. 56; *Brinckerhoff v. Bostwick*, 88 N. Y. 52; Id., 99 N. Y. 193, 1 N. E. Rep. 663; *Robinson v. Smith*, 3 Paige, 231; *Association v. Coriell*, 34 N. J. Eq. 383; *Association v. Lyon*, 29 N. J. Eq. 111; *Hodges v. Screw Co.*, 1 R. I. 312; *Ellis v. Ward* (Ill. Sup.) 20 N. E. Rep. 671; *Marshall v. Bank*, 85 Va. 676, 8 S. E. Rep. 586. These cases firmly establish the doctrine we have announced, and the rule is not seriously questioned by appellant's counsel. It is said, however, that whatever be the rule to be applied to this case, in so far as it seeks to charge defendant as a director, the case against him as a member of the investment committee is at law. It seems to us that as a member of this committee he was none the less a trustee than while acting as a director. In either case he held a position of trust in the corporation, and occupied a fiduciary relation to the other stockholders. The reasons for charging him in equity are no stronger in the one case than in the other. His position as a member of the investment committee called for the exercise of good faith and of reasonable care and prudence in

the business intrusted to him. No more is required of a director. The jurisdiction of a court of equity is maintained in many of the cases because the misconduct of the manager or director of the corporation is treated as a constructive fraud. If it be fraud, then it is clear that the courts of law and equity have concurrent jurisdiction. The ruling of the court on the motion to transfer to the law calendar is so palpably right that little further need be said of it. Even if it be conceded that the petition stated a cause of action at law, yet joined therewith were matters of equitable jurisdiction, which could not have been tried to a jury. Plaintiff not only asked a money judgment, but also prayed for the cancellation of the mortgages upon the property which it sold under the attachment, and a decree declaring defendant's claim thereto fraudulent, and of no effect against the lien created by the attachment. It also asked an accounting from defendant to determine the amount of its loss by reason of his breach of trust. All these matters are of equitable cognizance, and could not have been tried at law. *Falker v. Linehan*, 88 Iowa, 641. Nearly all the authorities cited by appellant relate to cases of negligence or misconduct disconnected from any trust relation, and are clearly not applicable to the case at bar.

II. The defendant pleaded in defense that, at the commencement of the attachment suit by plaintiff against Johnston & Co., he was in possession of the goods attached, and was garnished upon process issued in the case, and notified to appear at the next term of court and make answer; that he did appear and give his answers, which were controverted by plaintiff, and issue taken thereon, which issue was pending until

February 23, 1893, when the proceedings were dismissed against him. These allegations were, on motion of plaintiff, stricken from the pleading; and of this defendant complains. We understand the plea to be that of another action pending. As such, it is clearly defective, because it shows upon its face that at the time it was interposed the garnishment proceeding had been dismissed, and defendant was no longer holden thereunder. But, if this were not shown, the plaintiff, by taking the very goods from defendant, under the attachment, which it claimed defendant was holding for W. S. Johnston & Co., at the time he was garnished, waived its claims against the garnishee on account of these goods. It would, under such circumstances, clearly be estopped from insisting upon its garnishment against defendant. If, however, there was any error in the ruling, it was afterwards cured, because plaintiff, in its reply, admitted in express language the statements contained in this part of the answer which was stricken, and defendant had the full benefit of such admission.

III. Defendant's answer also contained a counterclaim based upon an alleged conversion by plaintiff of the goods taken by defendant from W. S. Johnston & Co. in satisfaction of the debts owing him, and it is insisted in argument that this counterclaim is fully sustained. Defendant's contention, as we understand it, is that when he was garnished in the main suit, before the attachment was levied upon the property, he was then holding property which he had received from W. S. Johnston & Co., which was worth much more than the amount of plaintiff's claim, and that the attachment was so far satisfied thereby that it could not thereafter be levied upon the specific property held by him; that his personal liability, if any existed, was largely in excess of plaintiff's claim, and

he became responsible for the payment of plaintiff's judgment, if he was under any liability, and that the subsequent attachment was not only useless, but unauthorized; and that, when levied upon the property held by defendant, it amounted to a conversion of that property. This, to say the least, is an ingenious theory, but it strikes us as being without merit. Garnishment is simply one mode of attachment. When served it creates no lien upon the goods held by the garnishee, but makes him personally liable. But there is no reason why an attaching plaintiff may not release the garnishee, and take the goods held by him, if it sees fit to do so. No prejudice is wrought the garnishee, that we can see. Plaintiff merely releases the garnishee from personal liability, and cannot thereafter insist upon any responsibility in the garnishee on account of having had possession of the goods when garnished. The plaintiff was not liable for conversion in taking the goods on the attachment, merely because it had previously caused the defendant to be garnished.

IV. But little is said in argument upon the real merits of the case. Indeed, we doubt if much could be said in justification of defendant's conduct. He, as a director in the plaintiff bank and as a member of its investment committee, was in duty bound to exercise the most scrupulous good faith and perfect honesty, and at least the same degree of care and prudence which is generally exercised by business men in the management of their own affairs. By voluntarily assuming these relations, he invited confidence, assumed to possess the requisite skill and knowledge needed in the conduct of the business, and impliedly represented that he would bring them to bear in the discharge of his duties. He, among others, invited depositors to confide to it their savings, and undertook to carefully, prudently, and honestly loan them in such manner that

they would not be lost. It was his duty, as a member of the investment committee, to advise his associates of any and every thing known to him affecting the financial condition and situation of proposed borrowers, and this without being asked. He impliedly contracted to give this information. That he did not do so he concedes, and his excuse is—*First*, that he was not asked about the financial condition of W. S. Johnston & Co., and, *second*, that the officers of the bank knew of the condition of the firm, or that he was justified in believing they did know. The first is no excuse whatever. Defendant owed an active duty to the bank, its stockholders, and depositors, which he did not discharge, and cannot shield himself by saying no one asked for the information he possessed. The second is not sustained by the evidence. The other officers did not know of the exact financial condition of the firm. They had the right to assume, as there were no incumbrances of record against the stock owned by the firm of Johnston & Co., that the goods were clear, and that the bank stood on an equal footing with other creditors. They had the right, also, to assume that none of their own directory would attempt to enforce his private claims upon the stock, to the prejudice of the bank and its interests. It may be that these officers, or some of them, knew that the firm did not have much money when it commenced business, but they did not know that it owed one of the directors for the entire stock. They did not know that but little, if any, of this indebtedness to defendant had been paid; and they had the right to assume that, if the firm was not doing a successful business, defendant would inform them of this fact. They might reasonably assume, had they known of this indebtedness to defendant for the stock, that it was being extinguished from

time to time, and could rely upon defendant's inform-
ing them if such were not the fact. We think the decree
in this case is a just and equitable one, and, finding no
error, it is *affirmed*.

Kinne, J., takes no part.                              :   .