ADOLF GOBEL, INC. et al., Appellees, v. VONCE D. SKIPWORTH et al., Defendants; JAY E. DECKER et al., Appellants.

No. 45793.

MAY 5, 1942.

REHEARING DENIED OCTOBER 2, 1942.

R. F. Clough, of Mason City, for appellants.

Lowell L. Forbes and Blythe, Markley, Rule, Dibble & Cerney, all of Mason City, for appellees.

STIGER, J.— The petition and motion to strike are voluminous, and we will set out only an outline of the allegations to reveal the nature and theory of the complaint in which defendants claim there is a misjoinder of actions and parties and will refer only to the substance of the motion.

Plaintiff Adolf Gobel, Inc., a New York corporation, will be referred to as Gobel. Plaintiff Gobel Company of Iowa, is an Iowa corporation, the prior corporate name of which was Jacob E. Decker & Sons, and will be referred to as Decker & Sons.

Division 1 is a cause of action for Gobel and contains the following averments:

All defendants were directors of Decker & Sons at all material times. Defendants Skipworth, Decker, and Ingraham were directors of Gobel at all material times, and defendants Selby and Duffield were directors of Gobel at some of the times material to the actions. Skipworth and Ingraham were, respectively, president and secretary of Gobel. Ingraham was a practicing attorney and counsel for Gobel.

Gobel owned all but four shares of the 14,498 shares outstanding of Decker & Sons common stock. It had notes in the sum of $2,250,000 outstanding, due May 1, 1935, secured in part by 14,048 shares of Decker & Sons stock, and had insufficient resources to pay or secure an extension of its indebtedness without a sale of said stock.

In November 1933, Gobel instituted negotiations with Armour and Company, and others, for the sale of the stock or the assets and business of Decker & Sons. All of the defendants were aware of the negotiations and of the necessity of paying the Gobel notes at maturity.

Selby, Decker, and Duffield were the chief operating officers of Decker & Sons, Skipworth and Ingraham, officers of Gobel, acquiescing in their management and control of the company. All defendants knew the sale of Decker & Sons stock or its assets and business would terminate or endanger the control of

Decker & Sons by Selby, Decker, and Duffield and the personal benefits resulting to them from such control.

In August 1933, and continuously thereafter, Selby, Decker, and Duffield, aided and abetted by Skipworth and Ingraham, fraudulently conspired, in violation of their fiduciary duties to both corporations, to obstruct and delay negotiations for the sale until at or about the maturity of the notes, with the fraudulent intent of permitting Selby, Decker, and Duffield to acquire the Gobel-owned common stock of Decker & Sons at substantially less than its fair value, or, failing in this scheme, to fraudulently procure long-term excessive-employment contracts in anticipation of a change of ownership or control of Decker & Sons. Selby, Decker, and Duffield induced Skipworth and Ingraham to join in the conspiracy by agreeing to give Skipworth, among other wrongful benefits and advantages, a five-year employment contract with Decker & Sons at an annual salary of $10,000 per year, and arranging with Ingraham that he would be given excessive fees in the proceedings for the reorganization of Gobel under section 77B of the Bankruptcy Act, 11 U. S. C. A. 1071, section 207, it being contemplated by defendants that Gobel would be reorganized in bankruptcy if it did not pay said outstanding notes prior to their maturity.

Pursuant to the scheme, Selby, Decker, and Duffield falsely and fraudulently represented to the nondefendant officers and directors of Gobel that they had the means and ability to pay a fair price for the Gobel stock prior to the maturity of the Gobel notes. Said representations were known by all of the defendants to be false and fraudulent, and Ingraham and Skipworth, who had joined said conspiracy, refrained from advising their codirectors in Gobel, not defendants in this suit, that said representations were false and fraudulent.

(The petition alleges many other false representations by said defendants to the nondefendant officers and directors of Gobel for the same purpose.)

The said fraudulent conduct, with other fraudulent conduct, delayed the sale until after maturity of the notes and proceedings in bankruptcy were commenced, such conduct being a part of the scheme of defendants to depress the price of the stock and purchase the same below its fair value.

In November 1934, it appeared to defendants that a sale of the stock or the assets of Decker & Sons might not be much longer forestalled, and Selby, Decker, and Duffield, to promote their selfish interests and in anticipation of a change in control of Decker & Sons through sale, demanded written contracts of employment by Decker & Sons, each for a term of five years, Selby to have an annual salary of $18,126, Decker $27,500, and Duffield $18,126.

Skipworth and Ingraham, officers of Gobel and members of the conspiracy, constituted a majority of the proxies entrusted by Gobel to them for voting the Gobel-owned stock of Decker & Sons at the annual stockholders meeting of the Decker corporation.

Ingraham presented the employment contracts at the stockholders meeting and in the presence of the other defendants represented that no sale of the business or stock of Decker & Sons was contemplated and that the employment contracts were beneficial to and were desired by both corporations, said representations being known by all defendants to be false and fraudulent.

The Gobel-owned stock was voted in favor of the contracts without notice to or authorization from the board of directors of Gobel. In November 1934, the defendant directors of Decker & Sons passed resolutions authorizing the employment contracts, and in December the contracts were executed. The said salaries were grossly excessive in that they were disproportionately great in relation to the prior and current earnings of the corporation and for other reasons set out in the petition.

Prior to and after the execution and delivery of the said employment contracts, negotiations for the sale of the stock or business of Decker & Sons were continued by Gobel with Armour and Company, and in February 1935, Armour and Company offered to purchase immediately for cash the business of Decker & Sons at a price of $2,600,000, and for the fixed assets an additional amount equivalent to the excess of current assets over current liabilities. Selby, Decker, and Duffield opposed and obstructed the acceptance of said advantageous offer by, among other wrongful and faithless acts alleged in the petition, demanding of Decker & Sons and Armour and Company that said five-

year employment contracts be assumed by Armour and Company. Armour and Company refused to comply with this unreasonable demand; said demand, among other wrongful and faithless acts of the defendants alleged, resulted, as the defendants intended it should, in preventing consummation of the sale of the assets of Decker & Sons to Armour and Company prior to the maturity of the Gobel notes.

Following the collapse of the negotiations for the sale to Armour and Company, caused by the scheme of the defendants, and on April 26, 1935, Gobel, by Ingraham, its attorney, filed a petition for reorganization under section 77B of the Bankruptcy Act because of the maturity of the Gobel notes and the lack of provisions for meeting the maturity.

On August 15, 1935, Gobel and Decker sold the assets of the business of Decker & Sons to Armour and Company for $2,400,000, $200,000 less than Armour's prior offer. One of the conditions of the sale was that the employment contracts would be canceled.

On August 15, 1935, Ingraham falsely represented to non-defendant officers and directors of Gobel and Decker & Sons that the employment contracts were valid and enforceable. Defendants constituted a majority of the directors of Decker & Sons and paid Selby $42,500, Skipworth $20,000, Duffield $20,000, and Decker $15,769 for cancellation of their contracts, which sums constituted a waste of the assets of Decker & Sons and diminished the liquidating dividends paid Gobel on its common stock of Decker & Sons. The petition alleges plaintiffs paid in fees and expenses in the bankruptcy proceedings, interest on Gobel notes from May 1, 1935, to February 1, 1936, an amount in excess of $350,000—Ingraham receiving an excessive fee of $80,000 for services in the bankruptcy proceedings—and alleges other direct damage to Gobel, and, because of the wrongful, fraudulent, and unlawful acts and omissions to act and breaches of fiduciary duty by the defendants, the value of the Gobel-owned common stock of Decker & Sons was dissipated and depleted to an amount to be determined on the accounting, and that the business and credit and reputation and good will of Gobel were damaged.

Division 2 of the petition purported to set out a cause of

action in favor of Gobel Company of Iowa—Decker & Sons. This division adopted all the allegations of division 1 and .alleged that the fraudulent acts of defendants, enumerated in division 1, violated their fiduciary duties to plaintiffs Decker & Sons and caused that corporation great damage.

Each plaintiff clearly points out the relief it claims it is entitled to against defendants. This relief is based on the fraudulent course of conduct set out in division 1 of the petition.

Defendants in their motion to strike claim there is a misjoinder of causes of action in division 1, which purports to allege a cause of action for Gobel, because it contains averments of a breach of fiduciary duty by defendants as directors of Decker & Sons and that plaintiff Gobel seeks a recovery not only against the defendants as its directors but also against defendants as directors of Decker & Sons, and that plaintiff Gobel cannot, as a stockholder in Decker corporation, sue defendants for their torts against said corporation, as a shareholder's rights are derivative and a stockholder cannot bring an action to redress or prevent injuries to the corporation in the absence of a showing that a demand on the managing officers to institute a suit in the name of the corporation has been made and refused or that such demand would be unavailing.

Defendants moved to strike division 2 of the petition because the plaintiff Decker & Sons seeks recovery not only against defendants as its directors but also against defendants as directors of Gobel, and that this action is improperly joined with division 1.

Defendants have misinterpreted the petition and the theory on which the causes of action have been joined by plaintiffs.

Gobel is not, either as a corporation or stockholder, suing defendants as directors of Decker & Sons Corporation for a breach of their fiduciary duties to said corporation. It is suing its own directors and their coconspirators for its own damages occasioned by their breach of duty in diminishing the value of its property, that is, its stock in Decker Corporation, and in damaging its business, credit, reputation, and good will.

Decker & Sons are suing its own directors for their breach of fiduciary duty in wrongfully depleting its assets resulting in a

diminution of the value of all the common stock of said corporation.

Each plaintiff bases its cause of action on the same common scheme and conspiracy, consisting of a connected series of wrongful acts, a single course of conduct which was intended to injure and did injure both corporations. Each plaintiff seeks relief only for its own injuries growing out of the same single fraudulent course of conduct of its directors and their coconspirators.

The petition plainly alleges a breach of fiduciary duty by defendant directors to their corporations, and the defendants who may not have been directors of Gobel at some material time joined and were parties to the conspiracy and are equally liable with the defendant directors.

■ All persons participating in a breach of trust are liable as principals to the beneficiaries.

The case of Irving Tr. Co. v. Deutsch, 2 Cir., N. Y., 73 F. 2d 121, 125, states that:

"* * * one who knowingly joins a fiduciary in an enterprise where the personal interest of the latter is or may be antagonistic to his trust becomes jointly and severally liable with him for the profits of the enterprise. Jackson v. Smith, 254 U. S. 586, 589, 41 S. Ct. 200, 65 L. Ed. 418. Cf. Wendt v. Fischer, 243 N. Y. 439, 444, 154 N. E. 303."

See, also, General Rubber Co. v. Benedict, 215 N. Y. 18, 109 N. E. 96, L. R. A: 1915F, 617; Piccard v. Sperry Corp., 30 F. Supp. 171.

In Farmers Sav. Bk. v. Kaufmann, 201 Iowa 651, 653, 207 N. W. 764, 765, the court said:

"It is obvious that the defendant, as president and director, was in a fiduciary relationship to the bank. For all practical purposes, he was a trustee, and was legally obligated to care for the property of the bank and manage its assets in good faith. For any willful breach of trust or misapplication of the corporate funds, or for any gross neglect of or inattention to his official duties, he was responsible to the corporation."

As often stated, a director of a corporation should take the

same care of its property that men of average prudence take of their own property.

Section 10960, 1939 Code, reads:

"10960 When permitted. Causes of action of whatever kind, where each may be prosecuted by the same kind of proceedings, if held by the same party, and against the same party, in the same rights, and if action on all may be brought and tried in that county, may be joined in the same petition."

Defendants claim there was a misjoinder because the causes of action are not held "in the same rights."

However, section 10970 reads:

"10970 United interests in equity. Where two or more persons claim a right of recovery against the same party or parties on like causes of action cognizable in equity, they may join as parties plaintiff, and relief may be granted to each according to his interest."

The two causes of action in this suit were unquestionably "cognizable in equity" and they were properly joined under this statute. See Toledo Sav. Bk. v. Johnston, 94 Iowa 212, 62 N. W. 748.

For a clear exposition on the subject of joinder of parties and actions in equity, and especially under the comparatively recent statute, section 10970 (1924), see Duggleby v. Chicago, R. I. & P. Ry. Co., 214 Iowa 776, 243 N. W. 372.—Affirmed.

MILLER, HALE, OLIVER, WENNERSTRUM, and GARFIELD, JJ., concur.

BLISS, C. J., takes no part.