and Hotels, Sections 13 and 14.) For authority as to who is a guest, see *Arcade Hotel Co.* v. *Wiatt,* 44 Ohio St., 32.

The position maintained by the defendant having been determined to be wrong, the defendant became responsible for the safety of the personal possessions of the plaintiff left by her in her room while a guest of said hotel, in the absence of any substantial or proven claim of negligence on her part. *Fuller* v. *Coats et al.,* 18 Ohio St., 343, and *Palace Hotel Co.* v. *Medart,* 87 Ohio St., 130.

The judgment of the court below is affirmed, with costs assessed against the plaintiff in error.

*Judgment affirmed,*

GRANT and CARPENTER, JJ., concur.

---

BECKMAN, TRUSTEE, ET AL. *v.* THE EMERY-THOMPSON MACHINERY & SUPPLY CO. ET AL.

BECKMAN, TRUSTEE, *v.* THE F. W. NIEBLING Co.

*Judicial sales — Two-thirds appraisement — Section 11675, General Code — Inapplicable to personalty, when — Mortgagee as purchaser — Payment of purchase money into court, unnecessary, when — Trustee of bondholders — Authority to purchase mortgaged property — Receivers — Right to acquire property from purchaser at judicial sale.*

1. Section 11675, General Code, which provides that property can not be sold at judicial sale for less than two-thirds of its appraised value applies only to real estate, and since there is no rigid provision of the statute which requires personal property to be sold at judicial sale for two-thirds of the appraisement, it is within the power of the court to confirm a sale made, upon proper advertisement, at the highest and best bid.

2. It is not necessary where the mortgagee is the purchaser of property to pay the entire purchase money into court, when the principal amount thereof would be redistributed to him on account of his lien; but the exchange of receipts by the sheriff and the plaintiff is as effective as though the money had been passed back and forth.

3. The consent of all bondholders is not necessary to confer authority upon a trustee for bondholders to purchase the mortgaged property on behalf of the bondholders, but the non-assenting bondholders may compel such trustee to account to them for their full *pro rata* of the proceeds of the bid price, as though it had been received by him.

4. One who was a temporary receiver to hold property during foreclosure proceedings may after such sale by the sheriff purchase such property from the purchaser at such sale.

(Decided January 28, 1918.)

ERROR: Court of Appeals for Hamilton county.
APPEAL: Court of Appeals for Hamilton county.

*Messrs. Dolle, Taylor, O'Donnell & Geisler,* for Beckman, trustee.

*Messrs. Galvin & Bauer; Messrs. Hackett, Yeatman & Harris* and *Mr. A. B. Benedict,* contra.

*Messrs. Cobb, Howard & Bailey,* for receiver.

JONES, P. J. This action was brought into this court from the court of common pleas by error proceedings, and also on appeal.

The action in the common pleas court was one for the foreclosure of a mortgage upon real estate, machinery and other chattel property of a manufacturing business. Pending the proceedings, on June 28, 1916, a receiver was appointed under the terms of the mortgage or deed of trust, to take charge of the property pending the foreclosure,

with authority to operate said factory for the purpose of executing its contracts, and with other powers.

Afterwards a judgment was entered in favor of plaintiff for the sum of $93,957.70, finding that said mortgage had become absolute and was a valid and first claim upon said property, and ordering and decreeing that unless the amount of said judgment was paid to the plaintiff, with interest, within ten days from the decree, defendant's equity of redemption in said real and personal property should be foreclosed and an order of sale should issue to the sheriff of Hamilton county directing him to cause said real estate to be appraised, and to advertise and sell as upon execution all of said real estate and all of the personal property listed in the inventory and appraisement which had theretofore been made by said receiver, excepting the notes, accounts and bills receivable.

Under this decree an order of sale was issued, and an appraisement of real estate made and returned, appraising same in the sum of $15,000. The sale was duly advertised, and the property offered January 4, 1917. The machinery and all other property except the real estate was appraised at $37,779.75. On January 5, 1917, the sheriff made due return of the sale held by him under said order, reporting that the property had been sold thereunder to Vincent H. Beckman, trustee, as the highest and best bidder, for the sum of $35,186.50, being more than two-thirds the appraised value. A motion to confirm this sale was filed January 6, 1917. And on January 12, 1917, a judgment and decree was entered by the court finding that said

sale and proceedings thereunder had been in all respects in conformity to law and the orders of the court. And said sale was confirmed and the sheriff was ordered to convey to the purchaser, Vincent H. Beckman, as trustee for the bondholders of The F. W. Niebling Company, by deed and bill of sale according to law, the property so sold, and a writ of possession was awarded to him for the same. Said decree also ordered distribution of the proceeds of such sale as follows:

1. The costs, taxed at $137.64.

2. To said Beckman, as trustee, the sum of $1,004.10, for services and expenses.

3. To Dolle, Taylor, O'Donnell & Geisler, as attorneys for said trustee, the sum of $1,585.12, being $1,500 for services and $85.12 for expenses paid by them.

4. The balance of the purchase money to the plaintiff, Vincent H. Beckman, as trustee for the bondholders of The F. W. Niebling Company; said balance, amounting to $32,459.64, to be applied as a credit upon his judgment against The F. W. Niebling Company.

And judgment was entered in favor of said trustee against said company for the amount still remaining due on said original judgment, being $58,771.20.

After the purchaser had taken over the property under this sale and confirmation, acting under the advice and direction of a committee representing a large majority of the bondholders under said mortgage, he proceeded to privately advertise said property for sale and to receive written proposi-

tions for the purchase thereof, and thus disposed of said property at private sale.

On February 17, 1917, a motion was filed in said court proceedings by The Emery-Thompson Machinery & Supply Company to set aside the entry confirming the sale and distribution, made January 12, 1917, on the ground that said sale was irregular, contrary to law and was not to the best interests of the bondholders or parties interested. Said motion was filed without leave of court by attorneys on behalf of The Emery-Thompson Machinery & Supply Company, describing said company as a bondholder, but not otherwise setting out any interest in the proceedings on its part; and said company was not then a party to the record, nor has it since in any way been made a party therein.

A motion to strike this motion from the files was filed on February 24, 1917, by the plaintiff, on the ground that The Emery-Thompson Machinery & Supply Company was not a party to the action and had no standing in court to make said motion; and on the further ground that said motion was not made in good faith for the reason that said company was lending itself to an effort to interfere with the title of the purchaser because of disappointment in the subsequent sale and disposition of the property by him.

A hearing was had upon this motion, and on April 12, 1917, the motion was granted, and the court made certain findings of fact and conclusions of law and entered an order or judgment setting aside said sheriff's sale and the order of sale under

which it had been made, and appointing a receiver for said property.

The error proceeding was then filed in this court and an entry was made therein staying proceedings until a hearing of same could be had.

The appeal from said judgment and order was later filed in this court.

Both of these cases were brought to the attention of the court upon motions to dismiss the petition in error for want of jurisdiction, and to set aside the stay of execution granted by the court in the error case; which motions were overruled by this court under a decision filed May 14, 1917. [*Ante*, 168.]    A motion was also made in the appeal case to dismiss the appeal, which was overruled.

These two cases being now reached for hearing the plaintiff elected to proceed upon the appeal case, which has now been heard and submitted to the court, allowing the error case to await the decision of same.

The action of the court below in setting aside the confirmation and sale made by the sheriff in the foreclosure proceedings was taken at the instance of The Emery-Thompson Machinery & Supply Company, which claimed to be a bondholder, but which was not a party to the original action and was never formally made a party thereto.   It filed the motion to set aside, in the lower court, without leave, and upon that motion the court based its action, although it then had before it a motion from the plaintiff to strike said motion from the files.   The evidence seems to sustain the claim of The Emery-Thompson Machinery & Sup-

ply Company that it is the owner of some $250 out of the $88,000 of bonds represented by the mortgage.

Since coming into this court pleadings have been filed, styled "answers and cross-petitions" of Mrs. Ben Stein and Katherine E. Hart, each of whom claims to be the owner of four of such bonds of the face value of $25 each.

The hearing upon appeal is therefore on the motion of The Emery-Thompson Machinery & Supply Company to set aside the sheriff's sale, and upon the separate answers and cross-petitions of Mrs. Ben Stein and Katherine E. Hart.

These parties all deny the authority of Vincent H. Beckman, as trustee, to act on their behalf in bidding in or purchasing the property sold at sheriff's sale. There is, however, no dispute that he had a right, and that it was his duty, under the provisions of the mortgage which secured their bonds along with all the other bonds, to bring the foreclosure suit upon default under said mortgage.

There can be no question that, regardless of the wishes of these minority bondholders, such of the bondholders as desired could protect themselves by procuring their trustee to bid on their behalf at said sheriff's sale. From the evidence it appears that bondholders in the neighborhood of $86,000 did authorize and request the trustee to protect their interests by bidding in the property at two-thirds of its appraised value.

The regularity in the proceedings of this sheriff's sale is questioned by these objecting bondholders. It is contended that under Section 11675,

General Code, this property could not be sold for less than two-thirds of its appraised value.

This section does so require, so far as real estate is concerned. And this order of sale did provide that the sale should be made for not less than two-thirds of the appraised value of all the property. The confusion as to whether or not the trustee's bid was full two-thirds of the appraisement, arises from a typographical error in the sheriff's advertisement for sale, and from the further fact that the appraisement of the real estate made by the sheriff's appraisers was higher than that made by the receiver's appraisers. The real estate as appraised by the sheriff, including the buildings thereon and excluding all fixtures, was $15,000. The value of the remainder of the property, as stated in the sheriff's advertisement, was $37,-779.75. The total of these two sums is $52,779.75, but by a typographical error in the sheriff's advertisement that total was increased two thousand dollars, being there stated as $54,779.75. This error is one that appears upon the face of the advertisement and can mislead no one. Two-thirds of the true total, $52,779.75, is $35,186.50, which was the amount of the bid at the sheriff's sale, and which clearly complied with the law if personal property as well as the real estate was 'required to be sold at two-thirds of the appraisement. So far, however, as the personal property is concerned, there is no rigid provision of the statute which requires it to sell for two-thirds of the appraisement, and it is within the power of the court to confirm a sale made upon proper advertisement, at the highest and best bid.

The question, however, was made as to the total amount of machinery and chattel property other than real estate. The face of the inventory and appraisement as returned by the receiver's appraisers shows the real estate appraised in several items and that the total amount of real estate which must without question be classed as land and buildings is not less than $10,300; and the total property, real and personal, in that inventory, other than notes and accounts receivable, is $47,969.75. So that the property other than the real estate could not be greater than $37,669.75, which is less than the amount of such property as stated in the sheriff's advertisement.

The court is therefore of the opinion that there is no question but that the bid of the trustee was equal to or in excess of two-thirds of the appraised value of the property.

It is further contended that the sale can not be held valid for the reason that the cash amount was not paid into the hands of the sheriff, and for that reason the terms of the sale were not complied with by the purchaser.

The decree of distribution was drawn to show that the full amount was paid into the hands of the sheriff, and in turn distributed back, except as to costs and allowances to the trustee, to be credited on his judgment. It was so done as the most convenient method of showing the amount of the purchase money available for payment of the judgment. It was not improper to draw it in that manner, although it might as well have been drawn to show that no money other than costs and expenses was actually paid. The exchange of receipts by

the sheriff and the plaintiff was as effective as though the money had been passed back and forth. It is not necessary, where the mortgagee is the purchaser of property, to pay the entire purchase money into court when the principal amount thereof would· be redistributed to him on account of his lien. This matter is very clearly discussed in *Andrews, Assignee, v. Johns et al.,* 59 Ohio St., 65, in the opinion of the court on page 71 *et seq.* It was not necessary, therefore, in this case, to pay any money into the hands of the sheriff except an amount sufficient to cover the costs and allowances made by the court to .the trustee and his counsel.

It was further argued that there was no power on the part of the trustee to purchase the property on behalf of the bondholders unless all of the bondholders united in so requesting.

It would be strange, indeed, if, as in the present case, one or more of the bondholders might interfere with the preservation of the interests of the great majority of bondholders in their purchase of the property at the earliest opportunity offered in such a way as to save them any unnecessary loss. In this case the very fact that but little more than one-third of the judgment would be satisfied by the proceeds of the sale, and that no bidders were on hand to bid two-thirds of the appraisement, shows that it was to the great interest of the bondholders to buy at the sheriff's sale and become the owners of the property with as little further cost as possible in order that they might dispose of it to their best advantage.

The evidence in this case shows that the sale was not only advertised in strict accordance with

the law and the orders of the court, but that unusual efforts were made to widely advertise the fact that the sale would occur and to secure the attention of possible bidders who might be interested in that kind of property.

The complaining bondholders in this case are not legally interested in the subsequent sale of the property by the trustee. They can, as they have done, disavow Mr. Beckman's right to buy on their behalf, and they can insist upon his duty to account to them for their full pro rata of the proceeds of the bid price, as though it had been received by him. That is the extent of their rights in this matter.

The court is not concerned with what became of the property after the confirmation of the sheriff's sale. The only purpose of hearing evidence in regard to that was to show any irregularity or improper conduct that might have occurred in making the sheriff's sale. The fact that Mr. Manischewitz, who had been the temporary receiver to hold the property pending the sale, afterwards became the purchaser of the property from the trustee, does not in any way reflect upon the regularity or propriety of the sheriff's sale. The evidence shows that he finally purchased this property upon the same footing as any other party who might desire to bid upon same. The property belonged at that time to the trustee on behalf of such bondholders as had authorized him to act for them in purchasing it, and the sale was made under the supervision and by the direction of their advisory committee duly appointed; and none of them are com-

plaining in this case. This court has no interest in the matter of such sale.

A judgment will therefore be entered overruling the motion to set aside the sale of January 4, 1917, and the order of confirmation and distribution thereunder made January 12, 1917; and the proceedings of the common pleas court in this case after that date are without force and effect.

*Judgment for plaintiff.*

GORMAN and HAMILTON, JJ., concur.