## JACKSON, RECEIVER OF THE FIRST CO–OPERA–TIVE BUILDING ASSOCIATION OF GEORGE–TOWN, D. C. *v.* SMITH ET AL.

CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 130. Argued December 17, 1920.—Decided January 24, 1921.

Persons who knowingly join with a receiver in purchasing real estate at a sale made by the trustee of a deed of trust mortgage securing a debt due the receivership, are jointly and severally liable to the receivership for all profits realized from the purchase. **P. 588.**

48 App. D. C. 565, reversed.

THE case is stated in the opinion.

*Mr. W. W. Millan* for petitioner.

*Mr. Louis Addison Dent* for respondents.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

Smith and Wilson were sued in the Supreme Court of the District of Columbia by the receiver of the First Co-operative Building Association of Georgetown, D. C., for the amount of profits made by them and a former receiver of the Association in the purchase at a foreclosure sale and subsequent resale of land mortgaged to secure a note owned by the Association. The Supreme Court held them liable for the full amount of the profits, $743.68, with interest and costs. The Court of Appeals of the District reversed the decree and ordered that the bill be dismissed with costs. 48 App. D. C. 565. A writ of certiorari was granted by this court. 250 U. S. 655. The question before

us is whether the respondents are liable upon the following facts, and if so in what amount.

In 1908 the Supreme Court of the District appointed William E. Ambrose, a member of its bar, receiver of the First Co-operative Building Association of Georgetown, D. C. Among the assets of the Association so entrusted to the receiver was a note of Schwab for $2,700, secured by a mortgage deed of trust of land. The note being in default, Ambrose as receiver requested the trustee under the deed of trust to advertise the land for sale at public auction. The auction sale was held and a bid of $350 was made by Edwin L. Wilson, a member of the bar; but the trustee withdrew the property from sale because the bid was inadequate. Thereafter it was arranged between Wilson, Ambrose, and another lawyer, John Lewis Smith, who was counsel of the receiver, that the trustee should again advertise the property for sale; that Wilson should at the second sale use his own judgment whether to bid and, if so, what amount; and that, if he should happen to become the purchaser, the three should be jointly liable for the purchase price and any expenses incident to the purchase and should be jointly interested in the property purchased. The second sale was duly advertised. Smith and Ambrose were present, but gave no instructions or directions in regard to the sale either to the trustee or to his auctioneer. Wilson also attended and in the exercise of his own judgment and without previous conference with either Smith or Ambrose bid $491 and became the purchaser of the property. There was no evidence of any improper influence at the sale to prevent competition or to close competitive bidding or to bring about the sale to Wilson in preference to any one else. On the contrary it affirmatively appears that the sale was fairly conducted; that there was competitive bidding; and that the property was finally knocked down to the highest bidder.

Within a few days after the second sale Wilson and

Smith found, through the aid of real estate agents, a purchaser named Kite who was willing to pay $1,400 for the land. In order to convey a good title it was necessary to clear the land of tax liens and an outstanding tax title. This required $550—that is, $59 more than Wilson had bid. He voluntarily raised his bid by that amount. The land was conveyed by the trustee to Wilson and by Wilson to Kite, the deeds being recorded simultaneously when Kite paid the $1,400. Of this amount $652.32 was used to discharge taxes, tax liens and expenses of sale. The balance, $743.68, was divided equally between Wilson, Smith and Ambrose individually. Wilson had paid out in making the purchase no money of his own or theirs. The estate of which Ambrose was receiver got nothing, as the amount required to discharge the tax liens exceeded the amount bid by Wilson. Much later the facts were brought to the attention of the Supreme Court of the District. Ambrose resigned as receiver; Jackson was appointed in his stead; and as receiver brought this suit against Wilson and Smith to recover the profits which had been made by them and Ambrose.

Ambrose had, as receiver, the affirmative duty to endeavor to realize the largest possible amount from the Schwab note. *Baker* v. *Schofield*, 243 U. S. 114; *Robertson* v. *Chapman*, 152 U. S. 673, 681. To this end it was his duty to endeavor to have the land, when sold under the trust deed, bring the largest possible price. *J. H. Lane & Co.* v. *Maple Cotton Mill*, 232 Fed. Rep. 421. When he agreed with Smith and Wilson to join in the purchase if Wilson should become the successful bidder, he placed himself in a position in which his personal interests were, or might be, antagonistic to those of his trust. *Michoud* v. *Girod*, 4 How. 503, 552. It became to his personal interest that the purchase should be made by Wilson for the lowest possible price. The course taken was one which a fiduciary could not legally pursue. *Magruder* v. *Drury*,

·235 U. S. 106, 119, 120.   Since he did pursue it and profits resulted the law made him accountable to the trust estate for all the profits obtained by him and those who were associated with him in the matter, although the estate may not have been injured thereby.   *Magruder* v. *Drury*, 235 U. S. 106.   And others who knowingly join a fiduciary in such an enterprise likewise become jointly and severally liable with him for such profits.   *Emery* v. *Parrott*, 107 Massachusetts, 95, 103; *Zinc Carbonate Co.* v. *First National Bank*, 103 Wisconsin, 125, 134; *Lomita Land & Water Co.* v. *Robinson*, 154 California, 36.   Wilson and Smith are therefore jointly and severally liable for all profits resulting from the purchase; the former although he had no other relation to the estate; the latter, without regard to the fact that he was also counsel for the receiver.

It is said that, at a sale made under a mortgage deed of trust, the duty to obtain the highest possible price rests not upon the note holder, but upon the trustee under the deed of trust, and that the creditor may bid at the sale or refrain from so doing, as he may see fit.   *Richards* v. *Holmes*, 18 How. 143, 148; *Smith* v. *Black*, 115 U. S. 308, 315. This is true so far as it concerns the duty of the note holder to the debtor or other owner of the mortgaged property. But the many cases cited to this effect in Smith's and Wilson's behalf do not bear upon the question before us. Smith and Wilson are held liable for knowingly confederating with one who, as receiver of the estate of the note holder, owed a duty to it, and who put himself in a position where his personal interest conflicted with his duty.

We have considered the many other arguments urged in defense, but find in them nothing which should relieve Smith and Wilson from this liability.   The decree of the Court of Appeals of the District of Columbia is reversed with costs and that of the Supreme Court of the District is affirmed.

*Reversed.*