## CRITES, Inc., v. PRUDENTIAL INS. CO. OF AMERICA et al.

### No. 9333.

Circuit Court of Appeals, Sixth Circuit.

April 2, 1943.

Joseph Rosenbaum, of Chicago, Ill. (Haffenberg & Rosenbaum, of Chicago, Ill., and Arnold, Wright, Purpus & Harlor, of Columbus, Ohio, on the brief), for appellant.

Davis Harrison, of Indianapolis, Ind., and O. C. Ingalls, of Columbus, Ohio

(Davis Harrison, of Indianapolis, Ind., and Ingalls & Warnick, of Columbus, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The issues presented for review arise in a proceeding brought by the Prudential against its mortgagors and the appellant as their grantee to foreclose 22 separate farm mortgages. They were brought to the attention of the court below by the appellant's exceptions to credits claimed in the account of Simkins and Florence, rent and profit receivers of the mortgaged properties, for certain fees and expenses, and a counterclaim that the receivers be surcharged for profits received by Simkins and Prudential in breach of fiduciary obligations.

The original mortgagors were Henry M. Crites and May R. Crites, his wife, residents of Ohio. In the years preceding the filing of the foreclosure bills they had executed mortgages to the Prudential upon 22 parcels of adjoining farm property in Madison and Pickaway Counties, Ohio, each of which was in default in the payment of interest, taxes and insurance, and each contained a clause providing that upon such default the rents were to accrue to the benefit of the grantee. On February 17, 1932, the Prudential began 22 separate foreclosure proceedings against Henry and May Crites. It joined the appellant as a defendant because of conveyances made to it of the properties by the mortgagors. It is on the record explained that Crites, Incorporated, was formed by the unsecured creditors of the owners, in the hope that something might be salvaged from the farms. Each of the separate bills of foreclosure was in the name of Remy, Harrison & Remy of Indianapolis, Indiana, and Ingalls & Selby of Columbus, Ohio, as attorneys for the plaintiff. Upon their petition Simkins and Florence were appointed co-receivers "to collect the rents and proceeds of the real estate * * * to operate and manage said real estate through tenants, lessees or otherwise, to rent and lease said real estate, to pay delinquent taxes and assessments and insurance premiums, to make such repairs as may be necessary to preserve the value of the premises and to produce normal income therefrom, and to do such other acts as may be from time to time ordered by the court." By subsequent orders the receivers were authorized to borrow money from Prudential to pay taxes and insurance premiums and for the cultivation and preservation of the premises pending final determination of foreclosure, and likewise to borrow money from the bank for miscellaneous expenses and issue receivers' certificates therefor and also to execute leases to former tenants of Crites and others upon a share or crop rental basis. Though no order authorizing appointment of attorneys appears of record, it is clear that Harrison of the Indianapolis firm and Ingalls of the Columbus firm acted as attorneys for the receivers with the knowledge and approval of the court.

No answer having been made to the plaintiff's bill in any of the cases, a decree pro confesso was entered in each on May 2, 1933, the mortgages and the equity of redemption were declared foreclosed, and the marshal directed, after statutory notice, to sell the real estate on July 1, 1933, at public sale, at not less than two-thirds of the appraised value, and to report the execution of the decree to the court. The properties were bid in by the mortgagee at approximately the up-set price, and in due course through its attorneys, Harrison and Ingalls, Prudential moved for confirmation and by order of July 18 the sale was confirmed.

The receivers submitted their accounts to the late Judge Hough in April, 1934, and in the belief that since the amount bid at the sale was substantially less than the mortgage debt no one other than the mortgagee had any interest, he permitted copies of the accounts to be sent to the Prudential for auditing. Subsequently Judge Hough died, the original accounts were lost, and the Prudential appeared to be in no hurry to complete the audit. Nothing further appears to have been done until June 2, 1937, when the Prudential objected to the allowance of the claims on the ground that they were excessive, and a hearing having been noticed for June 2, the appellant having received notice thereof, filed the exceptions on which it now relies. Hearings were had before the court and also after reference to a Special Master. The appellant's exceptions and counterclaim were overruled, the receivers' accounts amended and as amended approved, and the report of the Master affirmed by the court. Crites has alone appealed, and Prudential supports the order of affirmance.

Two principal contentions are made by Crites. The first relates to a fee paid to

Simkins by an agent who negotiated the sale of a part of the property by Prudential after it had acquired title in foreclosure. It appears that prior to the sale Colonel Proctor of Cincinnati became interested in the 11 farms located in Madison County, and employed Jones, a real estate broker of Washington Court House, Ohio, to see if they could be bought from Prudential. Proctor was not a prospective bidder at the marshal's sale. He would buy the Madison County farms only if he could acquire them as a single parcel and obtain a warranty deed therefor from Prudential. Jones solicited the aid of Simkins, one of the co-receivers, to initiate negotiations with Prudential for the purchase of the Madison County properties. Jones had employed Simkins in a professional capacity on other matters and knew that he had also represented Prudential in other foreclosure proceedings in Ohio. Jones and Simkins entered into an agreement by which Jones engaged Simkins to represent him as his attorney in consummating the purchase, his compensation, however, to depend on whether or not the deal would be completed.

Prudential representatives at first declined to do anything about Proctor's offer until after the marshal's sale, but finally entered into a contingent contract binding Prudential to convey if and when it acquired the property; and an initial payment of $3,000 to bind the agreement was made by Jones about a week before the sale. While Simkins had told Judge Hough, in the presence of the attorney for the appellant, that he knew of a prospective buyer for the whole tract, he neither identified the buyer nor the price he was willing to pay, either to the court or the appellant. Jones was present at the marshal's sale but did not bid because he lacked authority to do so. The sale was of each farm separately and he had been instructed to get all of the Madison County property or none. Shortly thereafter the contract between Prudential and Proctor was carried out and a deed executed reciting a consideration of $249,106 but bearing tax stamps apparently indicating a substantially greater price. Jones paid Simkins a total of $2,797, although part of it was not on account of the Proctor transaction but for other legal services Simkins had performed for Jones. Upon these facts the appellant contends that Simkins was guilty of violation of his trust in accepting employment from Jones, and seeks to have Simkins, as receiver, surcharged with the fees received from Jones,

and the sum of $56,000, alleged to be the difference between what Prudential bid at the sale and what it received from Proctor.

■ Undoubtedly a receiver is a fiduciary, and in situations like the present, a trustee, whose obligation extends not only to the mortgagee at whose instance he was appointed, but likewise to the mortgagor or others interested in the equity of redemption. Cook v. Martin, 75 Ark. 40, 87 S.W. 625, 1024, 5 Ann.Cas. 204; Shadewald v. White, 74 Minn. 208, 77 N.W. 42; Jackson v. Smith, 254 U.S. 586, 41 S.Ct. 200, 65 L. Ed. 418. One occupying a fiduciary relation may not purchase or be interested in the purchase of property for his own benefit against the claims of his beneficiary. Where property is sold by him or under his direction and control, such purchase is voidable at the option of the beneficiary, Brown v. McGraw, 98 W.Va. 607, 128 S.E. 124, and it is not necessary to show a breach of duty resulting in actual injury. This is upon the principle that no one can serve two masters or be both buyer and seller in the same transaction. Hoyt v. Latham, 143 U.S. 553, 12 S.Ct. 568, 36 L. Ed. 259; Jackson v. Smith, supra. The rule is, however, subject to this modification,—that where the sale of trust property is made pursuant to a decree of the court, by a special commissioner or other agent appointed by the court, the fiduciary has the right and privilege of purchasing. In such cases the reason for the rule, to wit: a conflict between personal interests and fiduciary duties of the trustee, is absent, so the rule does not apply. Turner v. Kirkwood, 10 Cir., 49 F.2d 590; Starkweather v. Jenner, 216 U.S. 524, 30 S.Ct. 382, 54 L.Ed. 602, 17 Ann.Cas. 1167; Reeves v. Crum, 97 Okl. 293, 225 P. 177. This court has recognized and applied such modification of the general principle in Anderson v. Messinger, 6 Cir., 146 F. 929, 7 L.R.A.,N.S., 1094, and Ohio law is not otherwise. Beckman v. Emery-Thompson Machinery & Supply Co., 9 Ohio App. 275.

■ It will be observed that the present receivers were limited in authority and so in obligation. By the terms of their appointment they were authorized to collect the rents and profits from the farms and to operate and manage them; they had no authority to dispose of the real estate; had nothing to do with bringing about the sale and no control over the manner in which it was carried on. They were not in any sense liquidating receivers. Simkins did

not stand, in respect to the mortgaged property, in the position of both buyer and seller, nor was anything done by him or those with whom he was associated, to stifle bidding at the sale. It is perfectly clear upon the record that Proctor was not at any time a prospective bidder. Under the decrees, the farms could only be sold separately. Proctor was interested only in the Madison County acreage as a single parcel, and in its purchase only if he could obtain a warranty deed from Prudential. For this he was able and willing to pay. The knowledge of Proctor's interest in the property withheld from Crites could have been of no value to it if disclosed.

The law applicable to situations identical with or analogous to that here considered is fully reviewed in Turner v. Kirkwood, supra, and we have neither occasion nor desire to enlarge upon the exhaustive treatment there undertaken. Jackson v. Smith, supra, is not contra. It is clear that the receiver in that case was a liquidating receiver, and while he did not himself conduct the sale he was the owner of the debt, secured by title to property lodged in a trustee, and as ultimate beneficiary of the trust could and did require a public sale of the security in its extinguishment. He was, therefore, in a practical sense, both buyer and seller. Simkins occupied no such anomalous position. Moreover, Reeves v. Crum, supra, points out that in the District of Columbia there is no foreclosure by court action; that deeds of trust are there used, and that in Jackson v. Smith, supra, the sale was wholly under the direction of the receiver.

■ The second of appellant's principal exceptions to the affirmance of the order below, relates to the allowance of credits for attorney fees paid by the receivers to Harrison and Ingalls. It will be recalled that both attorneys represented the plaintiff in the foreclosure proceeding, and that Simkins had, on previous occasions, represented the Prudential. They had agreed among themselves that Simkins was to be appointed receiver and Harrison and Ingalls attorneys, and that they would pool their fees and divide them equally. In pursuance of the agreement Ingalls paid part of his fee to Simkins. Whether Harrison paid anything or participated in Simkins' fees does not appear. The Master found the fee-splitting arrangement reprehensible, and so do we. The court had no information in respect to it and the agreement invaded its authority to fix the fees of receivers and counsel as their respective contributions to the receivership activities might require.

■ Moreover, the status of Harrison and Ingalls as attorneys for both plaintiff and receivers, was an anomalous one. Their conflicting loyalties are brought into bold relief by evidence that at one stage of the proceedings Ingalls was obliged to threaten his client, Prudential, with contempt for failure to report on an audit of the receivers' accounts, and upon another that Ingalls and Harrison found themselves required to file objections on behalf of their client, Prudential, to the accounts of their clients, the receivers. It is true that Crites has little ground for complaint at this divided allegiance. From the beginning it knew, or should have known, that Harrison and Ingalls represented opposing interests, and this knowledge gained nothing from later information of the Proctor transaction. It stood by for years doing nothing either to prevent or correct the situation. The importance of this issue, however, transcends the interests of the appellant. It is a circumstance of which a court of equity must take cognizance and may not condone. In Weil v. Neary, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243, the Supreme Court held such fee-splitting contract as was here made, illegal and unenforceable, and in Woods v. City Nat'l Bank, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820, the court denied all compensation except for necessary expenditures actually made to the benefit of the estate where attorneys had dual interests similar to those here involved. This court has dealt similarly with such transactions. Tracy v. Willys Corp., 6 Cir., 45 F.2d 485. The fact that Judge Hough, under a mistaken impression that Prudential was the only party in interest, permitted such double allegiance, is no sanction for the course here followed. The conflict of loyalties did not appear until after his death.

■ Having in mind, however, that in Weil v. Neary, supra, the court did not deny all compensation to attorneys, that Judge Hough, though ignorant of the fee-splitting agreement, knew of the dual allegiance when he allowed Harrison and Ingalls each a preliminary fee of $250, we sufficiently penalize counsel and vindicate the proprieties when we direct amendment of the order below permitting credit to the receivers for such preliminary attorney fees and for all out-of-pocket expenses incurred

by the attorneys in behalf of the estate, but denying all credits for additional attorney fees to either Harrison or Ingalls.

We find no merit in other exceptions to the receivers' accounts. The items for traveling expenses and stenographic fees appear reasonable and have the sanction of concurrent findings of master and judge. The proofs fail to show negligence or fraud in the operation of the receivership or in the loans made to farmer tenants or **in** their collection. The order appealed from will be amended as directed, and

As amended affirmed.