## CURTIS v. GEORGE J. MEYER MALT & GRAIN CORPORATION et al.

### Civ. No. 3129.

District Court, W. D. New York.

Feb. 21, 1947.

Gaines & Hirsch, of Cleveland, Ohio, and Raichle, Tucker & Moore, of Buffalo, N. Y. (Howard R. Hirsch of Cleveland, Ohio, and Frank G. Raichle, of Buffalo, N. Y., of counsel), for plaintiff.

Saperston, McNaughtan & Saperston, of Buffalo, N. Y. (Omar G. Olds, of Buffalo, N. Y., of counsel), for defendant George J. Meyer Malt & Grain Corp.

No appearance for defendant Eugene J. Meyer.

KNIGHT, District Judge.

Corporate defendant moves to dismiss the complaint on three grounds: (1) lack of jurisdiction over the subject matter, (2) failure to state a claim upon which relief can be granted, (3) running of the statute of limitations. It also moves to strike out certain statements in the complaint and for a bill of particulars of ten specified items.

The decision of this motion requires a thorough analysis of the complaint.

Plaintiff alleges (Par. 1) that he is "the duly elected, qualified and acting Successor Trustee in Bankruptcy of the Estate of Forest City Brewery, Inc., an Ohio corporation, which on or about May 10, 1940, was adjudicated a bankrupt by order of the District Court of the United States in and for the Northern District of Ohio, Eastern Division"; that, by order of said court, he is authorized and directed to prosecute this action; that (Par. 2) he is a citizen of Ohio; that the corporate defendant is a New York corporation and the individual defendant a citizen of New York; that (Par. 3) the amount in controversy exceeds $3,000.

Plaintiff then alleges (Par. 4) that, on or about May 27, 1940, one Joseph G. Ehrlich was elected and qualified as operating trustee of said bankrupt, having for several months prior thereto been serving as operating receiver of its property, business and affairs; that (Par. 5) on June 19, 1940, said Ehrlich, in his capacity as trustee, pursuant to an order of said District Court, "did offer for sale all property, both real and personal theretofore owned by the Bankrupt, and then in his custody and control"; that (Par. 6), at time of said offer and at all times following "to and including consummation of the terms of sale by payment of the price then bid, as well as time of transfer of legal title from said Ehrlich, as such trustee, (he) participated with the defendant herein, and others in purchasing said property, from himself as such trustee for an aggregate consideration of * * * $135,200"; that (Par. 7) defendants, at all times, well knew that Erhlich was the operating trustee of said bankrupt's estate "and actively aided, abetted and assisted him in organizing a new corporation of name identical with that of the Bankrupt, for the purpose of acquiring the property of the Bankrupt, which purpose was fully achieved. As a result of such concerted action by and among the defendants and said Ehrlich, there were ultimately received the gains and profits hereinafter described."

Plaintiff then alleges (Par. 8) that "in none of the reports, applications or accounts filed by said Ehrlich in said Bankruptcy Court was his connection with the purchase of the assets of the bankrupt estate disclosed, nor did said defendants or either of them make such disclosure to said Court, although at the time of purchase as aforesaid, said Ehrlich was the owner of stock in said corporation and an executive officer thereof"; that (Par. 9) defendant Eugene J. Meyer acquired ⅓ of the authorized capital stock of the new corporation, to which the former trustee Ehrlich conveyed the bankrupt's assets, and several months after such conveyance did sell and assign said stock to Ehrlich "for a consideration greatly in excess of the sum originally paid by him for the same" and "received from said corporation substantial compensation and emoluments for service as an officer and director thereof, the exact amount thereof being pres-

ently unknown"; that (Par. 10) shortly after the organization of the new corporation, from the inception of which Ehrlich was an officer, director and stockholder therein, it, acting by and through Ehrlich as its president and treasurer, executed and delivered to defendant corporation its promissory note for all monies theretofore loaned to it by said defendant, together with an additional $85,000 secured by a mortgage on assets acquired from Ehrlich at his sale in his capacity as then trustee in bankruptcy; that said sum was thereafter paid in full to the corporate defendant "as and for a profit to it for its financial aid to and participation with said Ehrlich and others in the acquisition of assets of the bankrupt estate"; that (Par. 11), as of about July 1, 1944, Ehrlich and his wife, sole owners of all outstanding stock of the corporation to which the bankrupt's assets had been conveyed, effected the dissolution of said corporation, distributed the assets in kind to themselves and immediately resold same to Brewing Corporation of America for at least $474,441.-89, thereby acquiring for themselves a net profit in excess of $150,000; that (Par. 12), from June 19, 1940, to July 1, 1944, said Ehrlich was paid by new corporation an aggregate salary exceeding $48,000 and "was also allowed and paid fees by the Bankruptcy Court for services as operating trustee in bankruptcy in an aggregate amount approximating * * * $8,000"; that (Par. 13) one F. W. Drybrough of Louisville, Kentucky, acting as financial adviser and consultant to the defendants herein acquired ⅓ of the outstanding stock of the new corporation "and participated and collaborated in all transactions herein described with defendant and said Ehrlich and with full knowledge of said Ehrlich's dual capacity as trustee and purchaser"; that, coincident with the sale of stock in said corporation by defendant Eugene J. Meyer to Ehrlich and realization of profits therefrom, said Drybrough similarly sold his stock to Ehrlich and realized a profit as great as that of defendant Meyer; that (Par. 14), "as a direct result of the participation and collaboration of defendants herein with Joseph G. Ehrlich and others, of the assets of the bankruptcy estate,

there were realized profits and gains in aggregate amount of * * * $297,000, for all of which defendants are jointly and severally liable."

Plaintiff therefore prays for judgment against defendants in the sum of $297,000, with such additional amounts as may appear to be due upon the evidence introduced at time of trial, together with interest.

The first alleged ground for dismissing the complaint is "lack of jurisdiction over the subject matter." The moving defendant urges that the "judicial sale is the real subject matter of this action" and that the Ohio court has exclusive jurisdiction. Plaintiff urges that the real subject matter "is the tortious conduct of the two defendants herein to the extent that they aided and abetted a derelict trustee in violating a fundamental duty of a fiduciary."

Plaintiff's cause of action is predicated upon the misconduct of Joseph G. Ehrlich, the operating trustee of the bankrupt's property, who is not made a party herein. The corporate defendant relies upon Chappel v. First Trust Co., etc., D.C., 30 F. Supp. 765, which says: "A trustee in bankruptcy is an officer of the court which appoints him. If his conduct is wrongful as to the assets belonging to the bankrupt estate, he is accountable to the bankruptcy court and to no other. His accounts may be surcharged for any loss that his wrongful conduct may have occasioned." At page 766 of 30 F.Supp. The court further says: "The complaint in effect alleges that Wisconsin Valley Trust Company, while acting as trustee in bankruptcy, perpetrated a fraud upon the court which appointed it. No other court would have any jurisdiction to purge such a fraud." At pages 766, 767 of 30 F.Supp.

In the case at bar, however, the suit is not against the former trustee, who committed the alleged wrongful acts. It is a suit against two defendants who allegedly participated in these acts and is brought by a plaintiff who alleges that he "is the duly elected, qualified and acting Successor Trustee in Bankruptcy of the Estate of Forest City Brewery, Inc.", which was adjudicated a bankrupt by order of U. S. District Court, Northern District of Ohio,

Eastern Division, and that "By order of said Court in said case, plaintiff is authorized and directed to prosecute this action."

▮ These allegations are not denied by the corporate defendant, and, on this motion, must be assumed as true. It therefore appears that plaintiff's authority to bring this action is derived from the same bankruptcy court which adjudicated Forest City Brewery, Inc., a bankrupt. If he succeeds in collecting assets of the bankrupt, he will have to account to that court.

The Bankruptcy Act, 11 U.S.C.A., provides:

"46. a. The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this title, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"b. Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this title had not been instituted, unless by consent of the defendant, except as provided in sections 96, 107, and 110 of this title."

"This section has been construed generally to mean that, in absence of consent of the proposed defendants, who are adverse claimants, suits by the trustee can be brought only in the courts where the bankrupt could have brought them had bankruptcy not intervened, except suits for the recovery of property under the sub-sections referred to." In re Prima Co., 7 Cir., 98 F.2d 952, 956, certiorari denied Keig v. Harris Trust & Savings Bank, 305 U.S. 658, 59 S.Ct. 357, 358, 83 L.Ed. 426.

Section 110, sub. c, of the Bankruptcy Act provides: "The trustee, as to all property in the possession or under the control of the bankrupt at the date of bankruptcy or otherwise coming into the possession of the bankruptcy court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists; and, as to all other property, the trustee shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a judgment creditor then holding an execution duly returned unsatisfied, whether or not such a creditor actually exists."

The complaint alleges that plaintiff "is a citizen of the state of Ohio"; that the bankrupt was "an Ohio corporation"; that the corporate defendant is a New York corporation and the individual defendant "a citizen of the state of New York"; that the amount in controversy exceeds $3,000.

▮ This court, therefore, has jurisdiction over the subject matter of this action and of the parties.

Corporate defendant further moves to dismiss the complaint "on the ground that it fails to state a claim upon which relief can be granted."

The complaint alleges (Par. 6) that the operating trustee "Joseph G. Ehrlich participated with the defendants herein, and others, in purchasing said property, from himself as such trustee."

Section 52 of the Bankruptcy Act, in effect at the time of this alleged purchase, provided:

"c. A person shall be punished by fine, not to exceed $500, and shall forfeit his office, and the same shall thereupon become vacant, upon conviction of the offense of having knowingly * * * (2) purchased, while a referee, receiver, custodian, trustee, marshal, or other officer of the court, directly or indirectly, any property of the estate in a proceeding under this title, of which he is such officer."

"The trustee in bankruptcy cannot become the purchaser at his own sale either directly or through agents or other persons acting in his behalf. The rule rests on vital considerations of public policy and is applicable in every case; hence, it is not important whether the price paid at the sale was adequate in a particular instance." 8 C.J.S., Bankruptcy, § 318, p. 1050.

In Re Stephens & Co., D.C., 30 F.2d 725, 726, the court said that "to sanction a transaction wherein a trustee purchases, for himself and for his benefit, property of the trust estate, would do violence to every established principle of trusts, and would invite dishonesty in the relations of trustee and beneficiaries, and imperil the whole scheme of trusts."

In a case decided by a U. S. District Court in 1911 it was held that a sale was not invalidated by the fact that one of the trustees in bankruptcy had an interest in the corporation organized to purchase the bankrupt's property—In re National Mining Exploration Co., D.C., 193 F. 232—but the facts differed essentially from those in the case at bar. The court there said: "Woodward, one of the three trustees, was also a stockholder in, and a director and the treasurer of, the Iron Cap Company. He was also president and director of the bankrupt company. It is claimed that the Iron Cap Company cannot lawfully purchase from trustees of whom he was one. Undoubtedly one who is the only trustee of a bankrupt estate cannot buy the property of the estate from himself. [In] re Hawley, D.C., 117 F. 364. Undoubtedly also a trustee must serve no other interest save that of the creditors whom he represents. [In] re Wrisley Co., [7 Cir.,] 133 F. 388, 66 C.C.A. 450. But I do not believe that all this requires me to set aside this sale for no other reason than Woodward's connection with the Iron Cap Company. There were two other trustees without whom he could not have acted. The creditors appointed him with full knowledge of his connection with the bankrupt company. The organization of the Iron Cap Company was promoted by a reorganization committee of the bankrupt's creditors for the purpose of making this purchase. All the bankrupt's stockholders who chose to do so were given full opportunity to participate, and most of them have accepted the opportunity offered." At pages 236, 237 of 193 F.

The complaint in the instant case alleges (Par. 6) that the former trustee Ehrlich participated with the defendants in purchasing the bankrupt's property from himself as such trustee and that the defendants (Par. 7) "well knew that said Ehrlich was then the operating trustee * * * and actively aided, abetted and assisted him in organizing a new corporation of name identical with that of the Bankrupt, for the purpose of acquiring the property of the Bankrupt, which purpose was fully achieved." It is further alleged (Par. 14) that, as a direct result of such participation and collaboration, there were realized profits and gains in aggregate amount of $297,000, "for all of which defendants are jointly and severally liable."

"It is a well-settled rule that a trustee can make no profit out of his trust." Magruder v. Drury, 235 U.S. 106, 119, 35 S.Ct. 77, 82, 59 L.Ed. 151. "The course taken was one which a fiduciary could not legally pursue (citing the Magruder case). Since he did pursue it and profits resulted the law made him accountable to the trust estate for all the profits obtained by him and those who were associated with him in the matter, although the estate may not have been injured thereby (again citing the Magruder case). And others who knowingly join a fiduciary in such an enterprise likewise become jointly and severally liable with him for such profits." Jackson v. Smith, 254 U.S. 586, 588, 589, 41 S.Ct. 200, 201, 65 L.Ed. 418.

In Crites, Inc., v. Prudential Co., 322 U.S. 408, 414, 64 S.Ct. 1075, 1079, 88 L.Ed. 1356, it is said: "He was not free to deal with the property under his control as co-receiver in such a way as to benefit himself or his associates. Any profits that might have resulted from a breach of these high standards, including the profits of others who knowingly joined him in pursuing an illegal course of action, would have to be disgorged and applied to the estate (citing the last two cases)."

■ The complaint, therefore, states a claim upon which relief can be granted.

■ The third ground for the motion to dismiss the complaint is "that it appears on the face (thereof) that the claim and cause of action is barred by the statute of limitations."

Rule 12(b) of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requires that every defense "shall

be asserted in the responsive pleading thereto if one is required" but permits six defenses to be made by motion. The statute. of limitations is not included among these. Rule 8(c) provides: "In pleading to a preceding pleading, a party shall set forth affirmatively * * * statute of limitations."

"The motion to dismiss provided for under the rules is not designated to reach a case in which the plaintiff would not be entitled to any relief after the matters of defense have been presented. In other words it may not be substituted for an answer." Baker v. Sisk, D.C., 1 F.R.D. 232, 236.

The defense of the statute of limitations must be set up in the answer, according to Rule 8(c).

█ Corporate defendant further moves for "an order striking out all statements alleging participation, collaboration and conspiracy by this defendant with Joseph G. Ehrlich and other persons unnamed, who are not joined as defendants in this action."

Rule 12(f) provides that, upon motion, the court "may order any redundant, immaterial, impertinent, or scandalous matter stricken from any pleading." It does not appear that any of the allegations objected to come within any of the four named categories.

Corporate defendant finally moves for a bill of particulars of ten specified items.

Rule 12(e) provides that a party may move "for a bill of particulars of any matter which is not averred with sufficient definiteness or particularity to enable him properly to prepare his responsive pleading or to prepare for trial."

Corporate defendant states in its brief that it desires a bill of particulars to enable it "to prepare and serve a responsive pleading. The complaint herein is ambiguous, vague and uncertain and not definite as to any particulars and it is impossible for this defendant to know from a read-

ing of the complaint what cause of action the plaintiff is attempting to allege." It further states that it "is particularly concerned with requested items Nos. 4 and 6."

These two items read as follows:

(4). By whom, when and in what amounts the gains and profits were ultimately received as alleged in paragraph 7 of the complaint.

"(6). The acts committed by this defendant in participating with and aiding, abetting and assisting Ehrlich as alleged in paragraph 6 and 7 of the complaint, stating when, where, in what manner said acts were committed and the name and capacity of the officer or agent of this corporate defendant by whom said acts were committed."

█ The acts alleged against the corporate defendant are few and clearly stated. The dates, however, and the names of this defendant's officer or agent are not alleged. In this respect, the corporate defendant is entitled to a bill of particulars. Goshen Veneer Co. v. G. & A. Aircraft, D.C., 3 F.R.D. 344, 345.

█ The matters set forth in items (1), (2), (3), (7) are matters of public record easily ascertainable by the corporate defendant.

█ The matters set forth in items (5), (8), (9) and (10) can be ascertained by the corporate defendant by discovery procedure under the Rules of Civil Procedure. Fried v. Warner Bros. Circuit Management Corp., D.C., 26 F.Supp. 603. The granting of an order directing the service of a Bill of Particulars antedating the service of the answer usually receives little favor, and, doubtless, will soon be discontinued.

The Motion of the corporate defendant to dismiss the complaint and to strike certain allegations therefrom is denied. The motion for a bill of particulars is granted as to items (4) and (6) but denied as to the remaining items.