<hr/>

William M. GRAY, Trustee for the Northwest Exploration Company Creditors Limited Liability Trust, Plaintiff–Appellant,

v.

Thomas E. ENGLISH, Daniel M. Bell, and Basco, Ltd., Defendants,

and

English, Jones & Faulkner, Defendant–Appellee.

No. 93–5046.

United States Court of Appeals, Tenth Circuit.

July 25, 1994.

Andrew R. Turner (Sean H. McKee, also of Conner & Winters, with him on the briefs), Tulsa, OK, for plaintiff-appellant.

Paul F. Hultin (A.F. Ringold and J. Douglas Mann, also of Rosenstein, Fist & Ringold, with him on the brief), Tulsa, OK, for defendant-appellee.

Before LOGAN and MOORE, Circuit Judges, and OWEN, District Judge.*

LOGAN, Circuit Judge.

This is an appeal of awards of attorney's fees to the law firm of English, Jones & Faulkner (EJ & F) for services rendered to the trustee in a bankruptcy proceeding. The senior partner in EJ & F, Thomas E. English, served for the period at issue as both trustee and principal counsel for the Northwest Exploration Company Creditor's Limited Liability Trust created by the plan of reorganization. During pendency of the

---

* The Honorable Richard Owen, Senior United States District Judge, United States District Court for the Southern District of New York, sitting by designation.

bankruptcy English personally acquired an interest in a creditor's claim against the estate, thereby destroying English's "disinterested" status under 11 U.S.C. § 328(c). *See* 11 U.S.C. § 101(14)(A), (E).

The fees challenged on appeal can be divided into two categories: those earned by EJ & F for work performed before English acquired the creditor's interest, and those earned after English acquired the interest. The successor trustee asserts that EJ & F should have been denied all fees for services rendered before or after English lost his disinterested status. We review de novo the district court's legal determinations applying the statute; to the extent the fee awards were discretionary, we review for abuse of discretion. *Anderson v. Anderson (In re Anderson),* 936 F.2d 199, 203 (5th Cir.1991).

### I

Northwest Exploration Company was placed in involuntary Chapter 11 bankruptcy in 1982. English, then affiliated with the law firm of Gable & Gotwals, was appointed as counsel to the unsecured creditors' committee. In that capacity he was the principal architect of a reorganization plan that the court approved in 1984. Under that plan all assets of the bankruptcy estate were transferred to the Northwest Exploration Company Creditors Limited Liability Trust (NWX Trust), and the creditors whose claims had been approved were designated beneficiaries of the trust with the priority status accorded their claims by the court. One creditor's claim was by National Supply, a subsidiary of Armco, Inc. Daniel M. Bell, an employee of National Supply, was chairman of the creditors' committee. English was elected trustee of the NWX Trust. In that capacity he hired himself and his law firm to serve as attorneys for the trust. English left Gable & Gotwals in March 1985, but continued serving as trustee and counsel for NWX Trust, using

thereafter attorneys in the law firm he helped form, EJ & F.

In September 1986 English and Bell, with money loaned by English, purchased National Supply's claim in the NWX Trust for $11,750. They did this through "Basco, Ltd.," a joint venture they created which had no other assets, no bank account, and used a post office box for an address. Before their interest became generally known in March 1988, Basco received $58,751.95 in partial payment on the claim.[1]

Sometime after Basco's purchase Bell apparently told two other members of the creditors' committee of his interest. One of them informed Armco, which commenced an investigation. During that investigation both Bell and English denied any personal interest in Basco. But shortly thereafter, still without revealing his interest, English mailed to the investigator a check for the disbursements made to Basco less the $11,750 purchase price paid National Supply for the claim, accompanied by a letter stating that acceptance of the documents constituted a rescission of the purchase. English resigned as trustee of the NWX Trust in July 1988, and William Gray, the appellant herein, was selected as successor trustee.

Before English's resignation, EJ & F had received $195,218.36 for legal services rendered and expenses incurred for the period before English lost his disinterested status by purchasing National Supply's claim.[2] EJ & F made a final fee request for services performed and expenses incurred by English and EJ & F after that date. After taking evidence in a contested hearing, the bankruptcy judge refused to require disgorgement of the fees for services rendered before English lost his disinterested status. He also allowed EJ & F $179,928.93 in fees and expenses for the period after English acquired the creditor's interest, representing essentially all that EJ & F claimed less $91,576 attributable to work performed by English personally.

---

1. Later disbursements (to National Supply) for *this interest totalled an additional $141,592.20.*

2. The law firm of Gable & Gotwals had received $297,320.97 for services and expenses predating English's departure from that firm in March 1985. These disbursements are not contested and are not an issue in this appeal.

In making this decision the bankruptcy judge condemned the fiduciary breach by English, but praised the quality of his legal work. The judge stated that English "astutely" represented the creditors' committee, Appellant's App. tab 1 at 5, dealt with "monumental legal problems," *id.,* and he likened English's services to "a bright light in a most cloudy sky," *id.* at 3. The judge called English's plan of reorganization "a coup," "[i]nnovative," and "creative," serving as a foundation for other plans. *Id.*

Although he condemned the purchase of the creditor's interest and its cover-up, the judge noted that nine or ten other EJ & F attorneys worked on the matter over the two-year period. He found that the other attorneys at EJ & F did not know of English's wrongdoing. The judge treated the question as one for the exercise of his judicial discretion. In so acting, he refused to require the payback of previously approved fees and expenses and granted most of the final fee request, excepting the claim for services by English personally. In resolving counterclaims, the judge required English and Bell to pay $28,977 to reimburse the NWX Trust for transaction expenses incurred in the form of auditing and attorney's fees in the changeover of trustees.

## II

The initial employment of attorneys to assist the trustee is governed by 11 U.S.C. § 327(a), which provides as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and *that are disinterested persons,* to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added).[3] A creditor, of course, is not disinterested. *Id.* § 101(14)(A).

---

**3.** We dispose of this appeal on the basis the parties argued, as a case to which § 327(a) and § 328(c) are applicable. That would be proper if

Section § 328 provides limitations on the compensation of professionals who serve a bankruptcy estate. Among those limitations is one directly addressing the loss of disinterested status. It states:

> Except as provided in section 327(c), 327(e), or 1107(b) of this title, *the court may deny allowance of compensation* for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title *if, at any time during such* professional person's *employment* under section 327 or 1103 of this title, *such professional person is not a disinterested person,* or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c) (emphasis added).

The successor trustee argues that "public policy and . . . the purposes of the Bankruptcy Code" require denial of all fees, including those for services predating English's acquisition of the creditor's interest. Opening Brief of Appellant at 11. The trustee relies upon Supreme Court cases written during the period the 1898 Bankruptcy Code was in effect. That Code contained a section that flatly denied all compensation to an attorney "who at any time after assuming to act in [a representative or fiduciary] capacity" has purchased a claim against the debtor. 11 U.S.C. § 649 (repealed 1978).

The first of those cases cited by the successor trustee involved conflicts that existed from the outset, and affirmed a district court's denial of fees but not its disallowance of expenses. *Woods v. City National Bank and Trust Co.,* 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941). The opinion did not cite § 649 of the 1898 Code, and did contain broad language based upon general fiduciary principles:

> Furthermore, "reasonable compensation for services rendered" necessarily implies loyal and disinterested service in the interest of those for whom the claimant purported to act. *American United Mutual*

---

the bankruptcy judge entered an order approving the trustee's selection of attorneys, which is not clear from the appellate record.

*Life Ins. Co. v. City of Avon Park,* 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91. Where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were not shown to have resulted. *Cf. Jackson v. Smith,* 254 U.S. 586, 589, 41 S.Ct. 200, 201–02, 65 L.Ed. 418. The principle enunciated by Chief Justice Taft in a case involving a contract to split fees in violation of the bankruptcy rules, is apposite here: "What is struck at in the refusal to enforce contracts of this kind is not only actual evil results but their tendency to evil in other cases." *Weil v. Neary,* 278 U.S. 160, 173, 49 S.Ct. 144, 149, 73 L.Ed. 243. Furthermore, the incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent. Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.

*Id.* 312 U.S. at 268, 61 S.Ct. at 497.

The trustee also relied on *Wolf v. Weinstein,* 372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963). *Wolf* involved individuals trading in the debtor's stock after they entered upon their fiduciary duties, and whether they should be required to return to the estate compensation they had received previously. In determining that disgorgement was required the Supreme Court relied on the flat prohibition in the now repealed § 649 and made the following strong statement:

It is argued, however, that to require restitution at this late date, particularly when the trading involved small amounts of stock and was carried on apparently in good faith and without knowledge of the existence of [11 U.S.C.] § 249, imposes an unduly harsh sanction—a remedy disproportionate to the offense. While we recognize that in a case such as this the remedy is indeed a severe one, we cannot find that Congress intended anything less. To hold that one who trades in violation of § 249 forfeits only his right to *future* compensation would place a premium on concealment of transactions in the Debtor's stock and thereby jeopardize the salutary policies of the statute. Moreover, it is well settled that when the question arises in a terminal application for compensation or reimbursement under § 247, an applicant who has engaged in forbidden transactions near the end of the proceeding is to be denied compensation for all services he has rendered to the Debtor, however valuable those services may have been. Thus the policies of the statute afford no alternative but to order the restitution of all amounts of compensation and reimbursement received by these respondents since the start of the reorganization.

*Id.* at 654, 83 S.Ct. at 982 (footnote omitted).

These Supreme Court decisions, and many lower court cases involving breaches of fiduciary duties, invoke the tradition of holding trustees and other fiduciaries, including attorneys, to standards higher than the marketplace of commerce—"[n]ot honesty alone, but the punctilio of an honor the most sensitive." *Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) (Cardozo, C.J.). These decisions deprive the wrongdoing fiduciaries not only of their gains from their breaches of duty but also of compensation for their labors that benefitted the estate. This sanction serves to deter future wrongdoing by those punished and also to warn others who might consider similar defalcations.

■ We are not free, however, to base our decision on common law principles or a repealed statute. We must apply the statute currently in effect. Section 328(c) declares that when a professional employed by the bankruptcy estate ceases to be disinterested, the court "may" deny compensation. The successor trustee argues that this was meant to codify the absolute disallowance of former § 649. We disagree; the plain language of the statute is permissive. Further, even if

we could resort to legislative history it favors the permissive construction. *See* Sen.Rep. No. 95–989, 1978 U.S.Code Cong. & Admin.News 5787, 5825 ("Subsection (c) [of § 328] permits the court to deny compensation ... if the professional person is not disinterested."). The leading bankruptcy treatise states "the denial of compensation and reimbursement of expenses after services have been performed may be draconian and inherently unfair. In the absence of actual injury or prejudice to the debtor's estate, this sanction should not be rigidly applied." 2 *Collier on Bankruptcy* ¶ 328.04 at 328–34 (15th ed. 1994) (footnote omitted).

■ We are satisfied that § 328(c) was intended to give the bankruptcy court some discretion with respect to attorney fee awards when the attorney loses his disinterested status during the course of administering a bankrupt's estate. The permissive "may deny" language does not require the court to deny legal fees or disgorge previously paid fees in all cases. In exercising the discretion granted by the statute we think the court should lean strongly toward denial of fees, and if the past benefit to the wrongdoer fiduciary can be quantified, to require disgorgement of compensation previously paid that fiduciary even before the conflict arose. This approach is most in keeping with common law fiduciary principles and best serves the deterrence purpose of the rule. *See Continental Ill. Nat'l Bank & Trust v. Charles N. Wooten, Ltd. (Matter of Evangeline Ref. Co.),* 890 F.2d 1312, 1322–24 (5th Cir.1989) (fraudulent fee application deserves denial of all compensation); *Hunter Savings Ass'n v. Baggott Law Offices Co. (In re Georgetown of Kettering, Ltd.),* 750 F.2d 536, 540–41 (6th Cir.1984) (all fees denied when actual conflict of interest existed).

■ Here the bankruptcy judge purported to utilize his discretion in making his fee decision. We are constrained to determine only whether he abused that discretion. *See In re Anderson,* 936 F.2d at 203. An abuse of discretion occurs when "the appel-

late court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *McEwen v. City of Norman,* 926 F.2d 1539, 1553–54 (10th Cir.1991) (quoting *United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir.1986)).

Although there is little indication why Congress made denial of fees in conflict situations discretionary, it appears to be a recognition that a simple denial rule might not be appropriate in modern complex situations. In making our review we must first recognize that the compensation granted by the bankruptcy and district courts for the post-conflict period was not for English's services but for the services of other members of his firm. We cannot say that Congress intended the bankruptcy court to deny compensation to other attorneys who served the estate without actual knowledge of their fellow attorney's wrongdoing. Nor can we hold that in all cases the court must identify and require disgorgement of all sums the defalcating attorney may have received from prior fee allowances.[4]

We are concerned that despite the courts' denying compensation for English's services after he purchased the creditor's interest, he may have benefitted by virtue of his ownership interest in EJ & F by sharing in its earnings. We have no evidence in the record that EJ & F insulated English from receiving any of the $179,928.93 EJ & F obtained from its final fee request; and English surely participated in the $195,218.36 previously paid to EJ & F. However, the bankruptcy judge here credited English with having performed extraordinary services to the estate both before and after he acquired the creditor's interest. This is not a case of embezzlement or self-dealing in trust assets. The principal harm done by English was to the creditor whose claim he acquired; and once that purchase was revealed the creditor had its own remedy, now apparently satisfied.

It is a close case, and we might well have upheld more severe punishment of English

---

4. We note that some of the previously approved fees which included compensation for English's services went to Gable & Gotwals, a firm English left in 1985. Those fees are not an issue on

appeal, but the situation points to the difficulties in ordering disgorgement when other attorneys are involved.

and his law firm—to whom his conflict was attributable under ordinary agency principles. Nevertheless, the discretion is given to the bankruptcy court and we will not hold in the circumstances of this case that the court was required to deny the fees earned by the other firm lawyers or require disgorgement of fees already paid for services rendered before English lost his disinterested status.

AFFIRMED.