Manuel H. Rossy, Petitioner, *v.* Superior Court of Puerto Rico, San Juan Part, Jesús A. González, Judge, Defendant; Heirs of Luis Lloréns Torres, etc., Ints.

No. 2010.—Resubmitted July 10, 1958.—Decided September 24, 1958.

706

*Rodríguez Ema & Rodríguez Ramón* for petitioner. *Brown, Newsom & Córdova* and *Otero Suro & Otero Suro* for interveners. *Gabriel de la Haba* as amicus curiæ.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

The petitioner, Manuel H. Rossy, filed in the Superior Court, San Juan Part, a petition for intervention in a suit for Declaration of Common Ownership, Survey, Division of Common Ownership, and Claim for Fruits and Damages, in which the plaintiffs were Raúl R. Mimoso (as assignee of Antonia Ramos-Buist), Francisca and Hilda Ramos-Morales, Tomasa Morales widow of Ramos, and the Heirs of Jesús Ramos-Buist, León Ramos-Buist, Clemencia Ramos-Buist, and Edmundo Buist-Ramos; and as defendants, the Heirs of Luis Lloréns-Torres, consisting of his children, Luis, Elio,

and José Lloréns-Rivero, and his widow, Carmen Rivero-Rodríguez.

In the petition for intervention it was alleged as first cause of action that the intervener was the only heir of Manuel F. Rossy and the defendants the only heirs of Luis Lloréns-Torres; that Antonia, León, Jesús, and Clemencia Ramos-Buist had been the owners of a certain property having an area of 220 cuerdas, which is described in the complaint and which they sold to Luis Lloréns-Torres by public deed No. 42, executed on October 29, 1919, before notary public Luis Abella-Blanco; that Luis Lloréns-Torres, the said vendors, and Manuel F. Rossy executed a private agreement which was attached to the petition for intervention as Exhibit A, whereby the said vendors and Manuel F. Rossy bound themselves to co-operate with Luis Lloréns-Torres in a suit against The People of Puerto Rico involving 137 cuerdas of mangrove lands which was a part of the property sold, and that Luis Lloréns-Torres in turn bound himself to sell to the other appearing parties, if he were successful in such suit, one half of the mangrove lands for the sum of $1,000, which the parties considered was the just value of the assistance or co-operation which the other appearing parties obligated themselves to lend to Lloréns; that the latter prevailed in that suit which terminated on February 18, 1931; that Manuel F. Rossy gave his co-operation to Lloréns-Torres in accordance with the private agreement, and that for that reason a common ownership of property was constituted between Lloréns and the other subscribers of the private agreement; and, lastly, that Lloréns remained in possession of the mangrove lands in representation of all the members of such common ownership, wherefore the intervener prayed "that it be adjudged that the plaintiff, Manuel H. Rossy, as heir of Manuel F. Rossy, together with the other co-owners, are the owners of all the mangrove lands owned by the defendants which were part of the rural property described in the first paragraph of this complaint."

As second alternate cause of action the intervener, petitioner herein, alleged that the intention of the parties in executing the deed of October 29, 1919 and the private document of like date was to sell to Lloréns-Torres only the dry lands of the property and to convey to him the mangrove lands having an area of 137 cuerdas which were claimed by The People of Puerto Rico, as trustee, for the benefit of Manuel F. Rossy and the other appearing parties, but acknowledging to Lloréns one half of the said mangrove lands as compensation for his legal services in the prospective litigation with The People of Puerto Rico. It was further alleged that the private agreement above referred to was likewise a means to ". . . . compensate Manuel F. Rossy . . . for his professional services . . . in the assistance he was going to give, and actually gave, to quiet title to the mangrove lands of the rural property . . . (acknowledging) one sixth of the other half as compensation for services, subject to the condition that the action involving the ownership of the mangrove lands against The People of Puerto Rico be finally decided in favor of Lloréns-Torres."

As third cause of action the intervener alleged that Lloréns-Torres and his heirs carried out a series of transactions, as a result of which only 40.827 cuerdas of mangrove lands remained in possession of the defendants, part of which they own as sole owners and part in common ownership with Mercedes de-la-Torre; that the value of the mangrove lands disposed of by the defendants or their predecessors in interest is $5,000 per cuerda; that the plaintiff and the other co-owners, by acts of the defendants or their predecessor in interest, have been deprived in the corresponding proportion of the sum of $136,365. They therefore pray "that since defendants' predecessor in interest, or the defendants themselves, have disposed of a certain portion of mangrove lands in excess of their share under the contracts mentioned in the first and second causes of action, and that the plaintiff's undivided interest in one half of such man-

grove lands is short of 3.975 cuerdas, that the defendants be ordered to pay to the plaintiff the sum of $19,865, which is the value of the lands disposed of by the defendants or their predecessors in interest."

In the fourth cause of action the intervener prays for a survey of the mangrove lands referred to, alleging that the latter are adjacent to dry lands owned by the defendants and that in order to determine their area and location a survey is necessary. He further alleges that those lands can be divided, and prays that they be divided among the co-owners and that the defendants be ordered to execute proper public deeds.

The defendants moved for the dismissal of the four causes of action on the ground that they have prescribed pursuant to the provisions of § 1864 of the Civil Code (31 L.P.R.A. § 5294), and also requested to strike paragraphs 2, 3, and 4 of the second cause of action as irrelevant and because proof to substantiate the allegations therein is not admissible according to § 25 of the Law of Evidence (32 L.P.R.A. § 1668.) The lower court entered an order granting the motion for dismissal as to the first, third, and fourth causes of action, and also the motion to strike. Feeling aggrieved by this order, the intervener appealed to this Court by way of certiorari to review the said order. We issued the writ. He alleges the Superior Court erred as follows:

"First Error.—The lower court erred in holding that the first cause of action stated in the petition for intervention and, consequently, the third and fourth causes of action, have prescribed pursuant to § 1864 of the Civil Code, as being a personal action which prescribes after 15 years.

"Second Error.—The lower court erred in ordering the elimination of paragraphs 2, 3, and 4 of the second alternate cause of action, pursuant to § 25 of the Law of Evidence."

I

 The first cause of action alleged by the intervener relies entirely on the private agreement of October 29, 1919. The lower court found: that the contract established a conditional obligation on the part of Lloréns-Torres to sell to the other appearing parties one half of the mangrove lands in question; that it constituted a contract of promise to sell which in nowise could be considered as a conveyance of the ownership; and that from the face of the complaint it appeared that the condition on which Lloréns' obligation depended had been fulfilled since February 18, 1931, when the aforesaid action against the Government of Puerto Rico terminated favorably for him. The Superior Court therefore concluded that the dismissal of the complaint as to the first cause of action was proper, because it had prescribed pursuant to the provisions of § 1864 of the Civil Code.[1] The first cause of action having been dismissed, the court also dismissed the third and fourth causes of action which were predicated on the averment of the first: that there existed a common ownership of property between the intervener and the defendants.

The intervener, in turn, points out that the lower court, in deciding the motion to dismiss should have interpreted the allegations in the light most favorable to plaintiff (*Boulón v. Pérez*, 70 P.R.R. 941, and *Cruz v. Ortiz*, 74 P.R.R. 298), and it being thus construed the facts alleged are sufficient to constitute a valid claim. He maintains that it appears from the complaint that the suspensive condition was met, that is, that Lloréns prevailed in the suit; that he received the co-operation of the other parties to the agreement as stipulated; and that the delivery required by law to perfect a contract for the conveyance of the owner-

___

[1] "A mortgage action prescribes after twenty years, *and those which are personal and for which no special term of prescription is fixed, after fifteen years.*" (Italics ours.) (31 L.P.R.A. § 5294.

ship was made.[2] On this basis, he concludes that in comply-
ing with the suspensive condition, his predecessor in interest
came into possession of an aliquot part of the mangrove lands
by the creation of a common ownership of property, and
that, consequently, the action exercised by him in the first
cause of action of the complaint had not prescribed,
pursuant to the provisions of § 1865 of the Civil Code
(31 L.P.R.A. § 5295) : "Among coheirs, coowners, or pro-
prietors of adjacent estates, the action to demand the division
of the inheritance, of the thing held in common, or the survey
of the adjacent properties does not prescribe." [3]

In our opinion, the Superior Court did not err in con-
cluding that the complaint does not reveal that Lloréns-
Torres had conveyed the ownership of one half of the
mangrove lands to the other subscribers of the private
agreement of October 29, 1919. We could only reach the
conclusion urged by the petitioners if we held that the agree-
ment in question was a contract of sale to convey owner-
ship, and also that the delivery of the thing sold took place.
But it is obvious that the agreement of October 29, 1919,
could never be considered as one of sale. It provided as
follows:

"The contracting parties in this private agreement are, as
party of the first part, Luis Lloréns-Torres, assisted by his
wife, Carmen Rivero-Rodríguez; and as party of the second

---

[2] See § § 549, 1048, 1351, 1352, and 1353 of the Civil Code (1930 ed.).
This last contention is grounded on the fact that in the complaint it is
alleged that Manuel F. Rossy was in possession of the said private instru-
ment, and that it was found among numerous papers of the deceased
which remained in possession of his widow at his death."

[3] It was alleged in the complaint that ". . . . the common ownership
of property between the predecessor in interest of the intervener and
Llorens Torres having been established, the latter remained in possession
of those lands in the name and in representation of all the members
of the community." See the doctrine announced in *Alonso* v. *Muñoz*,
76 P.R.R. 512 (1954), and *Heirs of Rivera* v. *Manso*, 64 P.R.R. 617
(1945), on the interpretation of § 1865, *supra;* I Castán, *Derecho Civil
Español, Común y Foral* (Vol. II) 710 (9th ed. 1955) ; Judgment of the
Supreme Court of Spain of December 23, 1952, 40 Jur. Civ. 1100 (n. s.).

part, Manuel F. Rossy, attorney at law, and the Ramos-Buist brothers, named León, Jesús, Antonia, and Clemencia, who stipulate as follows:

"1.—That the subscribers, the spouses Lloréns-Rivero, are the owners of the property known as MONTE-REY, having an area of 220 cuerdas and situated in the ward of Monacillos of Río Piedras; and that on the northern part of that property there is a piece of mangrove land which The People of Puerto Rico is claiming without reason.

"2.—That the subscribers, the Ramos-Buist brothers, and Mr. Rossy, bind themselves to assist Mr. Lloréns-Torres by giving him all the necessary cooperation in the defense of the actions which The People of Puerto Rico proposes to bring; it being understood that the assistance to be given by Mr. Rossy shall be as attorney and adviser, while the co-operation of the Ramos-Buist brothers has consist only of furnishing to Mr. Lloréns-Torres all the antecedents and data necessary for his defense, which Mr. Lloréns-Torres admits have already been furnished to him by the four subscribers, the Ramos-Buist brothers.

"3.—In consideration of such assistance or co-operation on the part of Mr. Rossy and of the Ramos-Buist brothers, Mr. Lloréns-Torres, in the event he obtains judgment in the actions brought by The People of Puerto Rico, hereby agrees to sell or to convey to the other appearing parties one half of the said mangrove lands which may be involved in such claims; it being set forth herein that the part of the mangrove lands involved in this contract is situated on the northern part of the property, on the space or perimeter lying between Puerto Nuevo River, Barraco Brook, the Seboruco del Rey, and the old channel of Margarita Brook, and that the price of the said sale is the sum of one thousand dollar, which the contracting parties consider is the just value of such assistance or co-operation; that Mr. Lloréns, assisted by his wife, will sign the proper deed of sale for that amount in favor of the other subscribers in the proportion of one-sixth part for attorney Rossy, and the other five-sixth parts for the four Ramos-Buist brothers; provided, that such obligation to sell on the part of the Lloréns-Rivero spouses is only in the event that, by transaction or judgment, they are successful in the said claims of The People of Puerto Rico, that is, in the defense against them; and, further,

that this agreement refers only to the mangrove lands involved in such claims.

"4.—It is also stipulated that Mr. Lloréns shall have preference at all times, in the event of sale or lease by the other contracting parties, of the one-half part which corresponds to them.

"5.—Mr. Lloréns also acknowledges that the lumber of the adjoining shed and shack belong to León Ramos."

Thus, after acknowledging that Lloréns was the owner of Monterrey property and that The People of Puerto Rico sought, without reason, to claim a part thereof which consisted of mangrove lands, the contracting parties only assumed, briefly, the following obligations: (1) Rossy and the Ramos-Buist brothers agreed to assist Lloréns in the defense of the suit, the former as attorney and adviser, and the latter by furnishing the necessary data and antecedents; and (2) Lloréns agreed, " . . . . *if he succeeded in such actions of The People* . . . , " to sell or to convey at the proper time to the other appearing parties one half of the mangrove lands involved in such claims, and in such event to sign the proper deed of sale in the proportion of one-sixth for Rossy and five-sixth for the Ramos-Buist brothers. The parties fixed the price of sale at the sum of $1,000, which they considered was the just value of the assistance promised by Rossy and the Ramos-Buist brothers. Although on the date of the agreement the Ramos-Buist brothers had already complied with their obligation to furnish the necessary data and antecedents for the defense of the suit, Rossy still had to comply in the future with his obligation to assist Lloréns as attorney and adviser. The parties specifically established a circumstantial condition or a condition of time to execute the agreed sale: whenever " . . . . *by compromise or by judgment the said claims of The People of Puerto Rico are successful, that is, in the action against such claims.*" Lloréns' promise is characterized in the contract as an "*obligation to sell,*" which obviously refers to the future

event we have just mentioned. Therefore, the only possible conclusion is that Lloréns did not sell anything either to Rossy or to the Ramos-Buist brothers. He merely made a promise to sell, that is, he bound himself to sell in the future one half of the mangrove lands if he prevailed in the suit with The People of Puerto Rico. This promise, as such, did not convey the property or passed title of ownership over one half of the mangrove lands on the part of Rossy and the Ramos-Buist brothers. As stated in *García* v. *De Jesús*, 79 P.R.R. 139 (1956): "According to the well-established doctrine of the Supreme Court of Spain, construing § 1451 of the Spanish Civil Code, which is equivalent to our § 1340 (1930 ed.), the promise to buy and sell and the contract of sale are not identical and their consequences and juridical effects can not therefore be the same. The promise to buy and sell has been deemed as a preparatory contract or precontract, the purpose of which is the future execution of a contract of sale and the effects of which cannot correspond squarely to those of the actual and absolute sale. Thus, in the Judgment of November 14, 1927, that Court sees in such promise a contractual modality preliminary to a purchase and sale involving a future event. That of December 6, 1904 declares that one who promises to sell does not convey the property and that there exists only a personal action to demand the fulfilment of the promise. That of February 4, 1911 is to the same effect. That of July 10, 1946 established that in the reciprocal promise to sell, the parties do not sell and purchase but bind themselves to sell and purchase, that is, to give an ultimate consent. Consequently, the alleged promise to sell did not vest appellant with dominion title to the property in litigation." (At 143.)

In this connection, it matters not whether the promise to sell is unilateral or bilateral. If Rossy and the Ramos-Buist brothers did not promise to purchase or to accept the transfer of the title to one half of the mangrove lands, as appa-

rently was the case here, then the contract may be labelled an option to purchase. *Cf. Igartía* v. *Ruiz*, 79 P.R.R. 455, 459 (1956). Even if we admit that by virtue of the agreement of October 29, 1919, Rossy and the Ramos-Buist brothers bound themselves to purchase one half of the mangrove lands, there was only a bilateral promise to purchase and sell which was mutually accepted by the prospective purchasers and the future vendors, which is not equivalent to a sale passing title. In fact, there was no actual and definitive consent to execute a sale, and the parties merely promised to give consent to carry out a subsequent sale upon the performance of the future event on which the promised sale depended. Thus, there existed at the most a bilateral promise to sell which cannot be compared in our law with the contract of sale. See 4 Castán, *Derecho Civil Español, Común y Foral* 36–42, 51–158 (8th ed. 1956); IV-II Puig Peña, *Tratado de Derecho Civil Español* 83–141, 506–15 (1951); Judgment of the Supreme Court of Spain of November 11, 1943, 4 *Jur. Civ.* 283 (2d s.), commented in 28 *Revista de Derecho Privado* 50–54 (1944), and in 176 *Revista de Legislación y Jurisprudencia* 331–43 (1944); 3 Borrell y Soler, *Derecho Civil Español* 225–29 (1955).

Although the contract of sale does not by itself produce the conveyance of the title, it constitutes a valid title to convey the property when the delivery (actual or simulated) by the vendor to the purchaser takes place. Yet, the future acquirer of the thing in the bilateral contract of promise to purchase and sell does not acquire the title through the delivery, nor the right to record in the registry of property, nor does he receive the fruits and assume the risk of loss. The promiser continues to be the owner for all legal purposes: he retains the right of administration and enjoyment, and if he sells the thing to a third party, the latter becomes the owner, and the beneficiary of the promise may only claim damages. This solution stems from the fact that the bilateral promise to purchase and sell does not create a real

right but a mere obligation to perform. In other words, the right of the prospective purchaser is but a personal right.

As stated by Roca Sastre in his *Estudios de Derecho Privado* (Vol. 1, pp. 323–62), the bilateral promise to sell has the practical usefulness or advantage of procuring the immediate vinculum of the parties whenever for some particular circumstance a complete and definitive sale cannot be carried out. By the immediate vinculum the parties insure that the definitive or entire contract will be carried out or completed thereafter. That is why the promise to sell is a preliminary contract which produces an obligation to perform and not to give, since its only object is the execution of a contract of future sale. It is not conclusive and lacks the effect of conveying title, as distinguished from the sale in itself, since the parties do not bind themselves for the moment to convey the thing which is the object of the promise. It was so held in the judgment of the Supreme Court of Spain of November 14, 1927 (178 *Jur. Civ.* 317), in stating that: ". . . . the promise to purchase or sell, when there is an agreement as to the thing and the price, entitles the contracting parties, pursuant to the first paragraph of § 1451 of the Civil Code [counterpart of § 1340 of our Code], to demand mutually its performance, since . . . from such promise arises the double and mutual vinculum which renders the obligation bilateral, which without such circumstance would bind only the will of the promiser; but bearing in mind the characteristic of this contractual modality, preliminary only to the sale, that is, not to convey the title to the thing which is the object of the promise until the latter is performed, and that since this is a future event it might become impossible to perform the same, in the second paragraph of § 1451 of the Civil Code the lawmaker compares this fortuitous nonperformance with the voluntary nonperformance of some of the obligated parties, and authorizes the resolution of the agreement subject to the general rules

governing obligations. . . ." (At 329.) The distinction between the bilateral promise to sell and the sale itself was definitively established in the judgment of November 11, 1943 of that Court, 4 *Jur. Civ.* 283 (2d s.), rendered by José Castán Tobeñas. In that judgment it is held that, according to § 1451 of the Spanish Civil Code (§ 1340 of our Code): ". . . . it is necessary to accept the conception of bilateral promise to purchase and sell as a preliminary contract . . . the purpose of which is the future execution of a sale, the effects of which cannot coincide absolutely with those of the actual and definitive sale." (At 298.) [4]

In view of the refusal of one of the parties to comply with a precontract, an action to demand specific performance and not merely an action for damages will lie, if the basic obligation does not refer to purely personal acts or the basic conditions set out in the precontract are not insufficient. In principle, provided there is no actual impossibility, the performance *in natura* of the obligation to execute a new contract of sale may be demanded. Thus, if the thing promised for sale is still in the possession of the promiser, the creditor in a bilateral contract of promise to sell certain real property could demand its specific performance: the execution of the sale previously agreed upon and the corresponding public deed. See *Carlo* v. *Vargas*, 66 P.R.R. 387, 392 (1946); *Caballero* v. *Kogan*, 73 P.R.R. 617 (1952), and cases therein cited; Judgment of the Supreme Court of Spain of July 1, 1950, 31 *Jur. Civ.* 697 (2d s.); Castán, *op. cit. supra* 41–42; 1 Roca Sastre, *Estudios de Derecho Privado* 323–62 (1948); González Enríquez, *Naturaleza y Efectos de la Promesa de Venta*, 3 *Anuario de*

[4] This doctrine has been ratified in subsequent judgments of the Supreme Court of Spain such as those of March 28, 1944, 6 *Jur. Civ.* 319 (2d s.); March 15, 1945, 10 *Jur. Civ.* 160 (2d s.); October 26, 1946, 16 *Jur. Civ.* 164 (2d s.); December 19, 1946, 16 *Jur. Civ.* 760 (2d s.); July 1, 1950, 31 *Jur. Civ.* 697 (2d s.); January 19, 1950, 29 *Jur. Civ.* 244 (2d s.); May 21, 1952, 38 *Jur. Civ.* 1494 (2d s.); February 13, 1953, 41 *Jur. Civ.* 604 (2d s.); February 27, 1954, 45 *Jur. Civ.* 952 (2d s.); March 6, 1954, 46 *Jur. Civ.* 112 (2d s.).

*Derecho Civil* 1383 (1950); Calvillo, *Promesa Bilateral de Comprar y Vender: Efectos que Produce su Incumplimiento,* 189 Rev. de Leg. y Jur. 580 (1951). But this action is always personal in character, since as stated in the judgment of the Supreme Court of Spain of December 6, 1904 (99 *Jur. Civ.* 501), " . . . . It is evident that one who promises to sell a thing does not convey the title thereto until he carries out the promise; that in the meantime one in whose benefit the promise is made has no right to the thing, having merely a personal action to demand performance of the promise . . . (and it would be impossible) to abide by provisions and principles applicable to the case where the thing in question has been actually and lawfully acquired . . . for it is not plausible to pursue the same as a real action." (At 515–16.) Similarly, it is a well-established rule of our jurisprudence that the promise to sell merely gives rise to a personal action. See *Cordero* v. *Rivera,* 74 P.R.R. 548, 552–53 (1953); *Collazo* v. *Conesa,* 70 P.R.R. 144, 150–51 (1949); *Rullán* v. *Registrar,* 67 P.R.R. 658, 660–61 (1947); *Segarra* v. *Vivaldi,* 55 P.R.R. 153, 155 (1939); *Lange* v. *Honoré,* 47 P.R.R. 206, 210 (1934); *Calderón* v. *Registrar,* 46 P.R.R. 752, 754 (1934); *Berríos* v. *Dávila,* 28 P.R.R. 769, 771–72 (1920); and *González* v. *Lebrón,* 24 P.R.R. 374, 375 (1916).

Therefore, there is no doubt that the dismissal of the complaint as to the first cause of action on the ground of prescription was in order. Lloréns' obligation was a personal obligation which became extinguished after 15 years, pursuant to the provisions of § 1864 of the Civil Code (1930 ed.). In the case at bar, the term of prescription began to run from the time the action accrued, namely, from February 18, 1931. Therefore, when the complaint was filed in 1952, more than 15 years had elapsed. See *Cordero* v. *Rivera, supra; Lange* v. *Honoré, supra;* and *Berríos* v. *Dávila, supra.* That is the same doctrine underlying the judgment of July 4, 1911 of the Supreme Court of Spain

(22 *Jur. Civ.* 40), which states: ". . . . the complaint filed . . . was based on a contract of promise to sell El Solar property, wherefore it is unquestionable that a personal action was exercised therein which, as those of its class for which no term is fixed in the law, is extinguished after 15 years, pursuant to the provisions of § 1964 of the Civil Code [counterpart of § 1864 of our Code] . . . [and] from January 23, 1891, when it could have been filed, until it was brought in 1909, more than 15 years elapsed and it had therefore prescribed. . . ." (At 41.)

██ The argument of the amicus curiæ in the sense that in Puerto Rico prescription cannot be raised by a motion to dismiss, is without merit. The question was decided by this Court in *Ramos* v. *People*, 67 P.R.R. 600, 604 (1947), expressly stating as follows: "Although some Federal courts maintain that the defense of prescription should be pleaded affirmatively in the answer under Rule 8(*c*), and that it should not be raised by motion under Rule 12(*b*)(6) —*Curtis* v. *Meyer Malt & Grain Corp.* (1947), 6 F.R.D. 444, 10 Fed. Rules Service 12(*b*)325; *Baker* v. *N.S.*, 3 Fed. Rules Service 12(*b*) 325; *Patsavouras et al.* v. *Garfield*, 34 F. Supp. 406—other courts have given a more liberal construction to the rules and have decided that if the complaint shows on its face that the action is barred the defense may be raised by motion to dismiss under Rule 12(*b*)(6). See *Leimer* v. *State Mut. Life Assur. Co.*, 108 F.2d. 302 (C.C.A. 8, 1940); *A. G. Reeves Steel Const. Co.* v. *Weiss*, 119 F. 2d 472 (C.C.A. 6, 1941); *Gossard* v. *Gossard*, 149 F.2d 111 (C.C.A. 10, 1945). The reason which leads us to accept this last construction is that if under Rule 9(*f*) 'For the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter,' there is no reason why a party defendant should be compelled to raise the question of prescription as an affirmative defense under Rule 8(*c*). Since the averment of time, in connection

with prescription, is material to the cause of action, a complaint may be dismissed by motion if it fails to contain said averment." See, in this connection, *Bithorn* v. *Santana*, 68 P.R.R. 281, 286–87 (1948); *Iturriaga* v. *Fernández*, 78 P.R.R. 29, 33 (1955); 2 Moore, *Federal Practice* § 12.10 (2d ed.), and cases therein cited.

The distinction which the amicus curiæ seeks to establish between the substantive and the remedial statute of limitations does not alter the situation in the least. Such distinction was important in the federal jurisdiction under the old remedial doctrine which did not permit the raising of prescription by demurrer except when the question of remedial prescription was involved, that is, when the limitation of time became an integral part of the right or remedy created by statute. See 5 Cyc. of Fed. Proc. § 15.520. However, Rule 9(f) altered that remedial rule and, as already pointed out, it allows the defense of prescription by a motion to dismiss if it appears from the face of the complaint that the action has prescribed.[5] The petition for intervention in the case at bar expressly alleges that on February 18, 1931, final judgment was rendered in favor of Lloréns in a suit in which The People of Puerto Rico claimed title to the mangrove lands which were the subject of the private agreement of promise to sell. Under § 1869 of the Civil Code (1930 ed.), 31 L.P.R.A. § 5299, the period of prescription of the personal action to demand the performance of the promise began to run from the date the suspensive condition was met, and the predecessor in interest of the intervener, the petitioner herein, could have legally brought judicial action against Lloréns. Therefore, it appears from the face of the complaint herein that the action had prescribed when the suit was brought in 1952.

---

[5] We must reach an identical conclusion by applying Rules 7.6 and 10.2(5) of the Rules of Civil Procedure for the General Court of Justice, which are the counterpart of Rules 9(f) and 12(b)(6) of the Rules of Civil Procedure of 1943.

■ The averment of the complaint that the common ownership having been established, Lloréns remained in possession of the lands in the name and representation of all the members of such community, does not imply that Lloréns acknowledged his obligation and that, therefore, the 15-year term of limitation was interrupted, according to § 1873 of the Civil Code (1930 ed.), 31 L.P.R.A. § 5303. That implication should be rejected, since it rests on the premise that the private agreement was a contract of sale and that, the delivery having been made, a common ownership of property was established between the signers thereof. We have already held otherwise. On the other hand, it appearing from the face of the complaint that the applicable prescriptive period had expired, it was incumbent upon the plaintiff to plea the interruption of that term by filing the corresponding judicial action, or by extrajudicial claim of the creditor. It would indeed be unusual if from the complaint it would appear conclusively that the period of limitation has not been interrupted. To require such a thing would render dead letter the provisions of Rules 9(f) and 12(b) *supra,* and would controvert the remedial doctrine announced in the case of *Ramos* v. *People, supra.* See Brown, *Some Problems Concerning Motions Under Federal Rule 12(b),* 3 F.R.D. 146; and 2 Moore, *op. cit. supra,* § 12.10. Aside from this, in *Bithorn* v. *Santana,* 68 P.R.R. 281 (1948), we held that in opposing a motion to dismiss on the ground of prescription, the plaintiff should aver or prove the interruption of the term by extrajudicial claim against the creditor. *Cf. De Jesús* v. *Abbott,* 77 P.R.R. 488, 495–96 (1954). See, in this connection, *A. G. Reeves Const. Co.* v. *Weiss,* 119 F.2d 472, 476 (C.A. 6, 1941).

## II

■ In the second assignment of error the petitioner complains of the order of the respondent court to strike the second, third, and fourth paragraphs of the second alternate

cause of action. Those paragraphs constituted the gist of that cause of action. Therefore, their elimination would truly be tantamount to the dismissal of such cause of action. It was alleged therein, briefly, (1) that when deed No. 42 of October 29, 1919 and the private contract of like date were executed, the purpose and intention of the parties was to convey to Lloréns only the dry lands and one half of the mangrove lands of the property, but that the other half of the mangrove lands were conveyed to Lloréns as trustee for the benefit of Rossy and the Ramos-Buist brothers; (2) that the manner of distributing part of the mangrove lands of the property conveyed to Lloréns was a means of compensating Lloréns and Rossy for their professional services in favor of the Ramos-Buist brothers in the suit against The People of Puerto Rico; and (3) that the price of the sale agreed upon in the deed covered only the dry lands of the property, and *"the consideration of the conveyance to Mr. Lloréns-Torres of the mangrove lands was the value of his professional services as attorney as to one half of such mangrove lands, the other half remaining always the property and full dominion of the predecessors in interest of the other plaintiffs* (namely, the Ramos-Buist brothers), *who acknowledged in favor of their attorney, Manuel F. Rossy . . . one sixth of such half as compensation for services, subject to the condition that the suit against The People of Puerto Rico involving the ownership of the mangrove lands would be finally decided in favor of Mr. Lloréns-Torres."* (Italics ours.)

. The lower court ordered the elimination of those paragraphs on the ground that they would constitute inadmissible evidence to support the averments therein contained. It ruled that their purpose was to controvert the written agreement between the parties, which was contrary to the provisions of § 25 of the Law of Evidence (32 L.P.R.A. § 1668), which establishes in Puerto Rico the rule known as "parole evidence rule" in Anglo-American law. *Collazo* v. *Conesa,*

70 P.R.R. 144, 151 (1949); *Parós* v. *Canety*, 73 P.R.R. 336 (1952); and *Heirs of Marrero* v. *Santiago*, 74 P.R.R. 763 (1953). There is jurisprudence in the sense that when evidence is not admissible to support an averment, such averment may be stricken out. *Parks-Cramer Co.* v. *Mathews Cotton Mills*, 36 F. Supp. 236 (W.D.S.C. 1940); *Mebco Realty Holding Co.* v. *Warner Bros. Pictures, Inc.*, 6 Fed. Rules Serv. 12f.21 (N.J. 1942). However, as stated in *Tartak* v. *District Court*, 74 P.R.R. 805 (1952), motions to strike the averments are not favored. They will be granted only when the averment has no relation to the controversy or when it is clearly redundant, immaterial, impertinent, or scandalous. See 2 Moore, *Federal Practice* § 12.21 (2d ed.). Furthermore, there is no question that it would be proper to admit evidence showing that the consideration set forth in deed No. 42 of October 29, 1919, or stated in the private agreement of like date, was not in fact what induced the parties to make those contracts. Nor does the rule which excludes extrinsic evidence to controvert or vary the terms of a written agreement preclude proof to show what was the real transaction between the parties, even though such transaction appears to be different from that stated in a public or private instrument. *Marxuach* v. *Acosta*, 39 P.R.R. 872 (1929); *Ochoteco* v. *Córdova*, 47 P.R.R. 522 (1934); *Ramírez* v. *Ramírez*, 65 P.R.R. 510 (1946); and *Heirs of Marrero* v. *Santiago*, 74 P.R.R. 763 (1953); 3 Corbin, *Contracts* § § 573–96 (1951). We therefore believe that the elimination of the averments contained in the second cause of action on the authority of § 25 *supra* of the Law of Evidence was not in order.

However, it is necessary to decide in this appeal whether the second cause of action should have been dismissed on the ground of prescription. In fact, the defendant raised the defense of prescription in its motion to dismiss as to each and all of the four causes of action alleged by the intervener. In a certiorari we may enter the final

judgment which should have been rendered by the lower court, as in an appeal. *Com'r of Education* v. *District Court*, 74 P.R.R. 306, 321 (1953), and *Borinquen Furniture* v. *District Court*, 78 P.R.R. 858, 860 (1956). Here we are in a position to do so, for the controversy merely involves a determination on a question of law. We could not refuse to consider it without failing in our duty of imparting substantial justice. *Cf. Piovanetti* v. *Vivaldi, ante,* p. 108, 122, 123 (1957).

■■■■ Considering the averments contained in the second cause of action in the light most favorable to plaintiff, we believe that the claims therein asserted against the defendants had prescribed by 1952, when the complaint was filed. In fact, express trusts (inter vivos or constituted upon real property) must be constituted by public deed which must be recorded in the Registry of Property. Sections 836 and 838 of the Civil Code (1930 ed.), 31 L.P.R.A. § § 2543 and 2545. Moreover, our law prohibits secret trusts. Section 844 of the Civil Code (1930 ed.), 31 L.P.R.A. § 2551. Therefore, Rossy's claim based on the existence of an implied trust (whether the "resulting" trust or the trust known as "constructive") constitutes an action by which the presumptive trustee is requested to comply with the alleged obligation of conveying one sixth of the mangrove lands in order to avoid unjust enrichment. We have already held in *McCormick* v. *González,* 49 P.R.R. 460, 483–84 (1936), and in *Fernández* v. *Laloma,* 56 P.R.R. 348, 360 (1940), that such action is a personal action which prescribes after 15 years from the time it could have been exercised, pursuant to § 1864 of the Civil Code (1930 ed.). *Cf.* 4 Scott, *Trusts* 2924–30, 2933–35, 3150–52 (2d ed.); Annotation in 52 A.L.R.2d 220 (1957); Scott, *Resulting Trusts Arising Upon the Purchase of Land,* 40 Harv. L. Rev. 669 (1927); and 34 Am. Jur. § § 175–80. It is true that in the Anglo-American legal system prescription does not apply to an action based on a resulting trust, but merely governs the

concept of "laches". However, in Puerto Rico the 15-year period established by law for all personal actions having no special prescriptive period, governs as to an action to demand the performance of an implied trust, resulting as well as constructive. This is so because the doctrine of implied trusts was incorporated in Puerto Rico by jurisprudential doctrine for the purpose of preventing unjust enrichment in situations which apparently are not covered by our positive law. See *Luperena* v. *P. R. Transportation Authority*, 79 P.R.R. 438, 446–48 (1956), and cases therein cited; Dawson, *Unjust Enrichment* (1951); Rabasa, *El Derecho Anglo-americano* (1944) 316–40. It is highly probable that through the quasi-contracts and the classical action of unjust enrichment, denominated *in rem verso* because it seeks the restitution, all direct and indirect patrimonial displacements without a legal cause therefor may be remedied in our law.[6] If this were so, the existence of implied trusts would be futile in the Puerto Rican law. In any event, it is impossible to apply to an action for performance of an implied trust a prescriptive period different from that which governs actions to prevent unjust enrichment. As we know, the action to demand the performance of a quasi-contract and the action *in rem verso* prescribe after 15 years from the date they could have been exercised. See, in this connection, IV-II Puig Peña, *Tratado de Derecho Civil Español* 566 (1951); and 2 Díaz Pairó, *Teoría General de las Obligaciones* 26 (1954). Under the theory of unjust enrichment, if his action has not prescribed, the intervener would have been entitled to the restitution of the specific thing (one sixth of the mangrove lands) if at the time of bringing the action those lands were still *in natura* in the patrimony of the enriched

---

[6] See Núñez Lagos, *El Enriquecimiento sin Causa en el Derecho Español* (1934); IV-II Puig Peña, *Tratado de Derecho Civil Español* 559–66 (1951); 2 Díaz Pairó, *Teoría General de las Obligaciones* 18–42 (1954); 7 Planiol and Ripert, *Traité Pratique du Droit Civil Francais* 47–78 (1954); Goré, *L'Enrichissement Aux Dépens d'Autruit* (1949); and Ripert, *La Regle Morale Dans les Obligations Civiles* 244–69 (4th ed. 1949).

person, namely, Lloréns or his heirs. But such action is never an action for revendication or a real action, but for the specific performance of a personal obligation. See Núñez Lagos, *El Enriquecimiento sin Causa en el Derecho Español* (1934); Castán, *op. cit. supra* 793–814; II-I Josserand, *Derecho Civil* 450–62 (Span. transl. 1950); 1 Roca Sastre, *Estudios de Derecho Privado* 485–520 (1948); II-II Puig Brutau, *Fundamentos de Derecho Civil* 603–57 (1956).

▬ The averments that the manner of distributing part of the mangrove lands of the property conveyed to Lloréns constituted a means for compensating Rossy for his professional services in the suit against The People of Puerto Rico, merely set forth a cause of action based on a promise to sell. Under this theory, the only fact alleged is that Lloréns bound himself to pay attorneys' fees to Rossy on the promise to convey to him in the future one sixth of one half of the mangrove lands. It is not alleged that Rossy was the owner of one sixth of those lands before the deed and the private agreement of October 29, 1919 were signed. And according to this theory, after those contracts were signed the only proper action was a personal action by Rossy against Lloréns to demand the performance of a promise to sell. As in the first cause of action, this claim had prescribed by 1952 by the lapse of more than 15 years from the date it could have been filed.

▬ The averments in the third paragraph of the second cause of action, as pointed out above, are the following: (1) that the price of the sale agreed upon in deed No. 42 of October 29, 1919, between the vendors, the Ramos-Buist brothers, and the purchaser, Lloréns-Torres, covered only the dry lands; and (2) that the consideration of the conveyance of the mangrove lands to Lloréns by virtue of that deed was the value of his professional services as attorney as to one half of those mangrove lands, the other half remaining always the property and full dominion of the Ramos-Buist brothers, who acknowledged to Rossy one sixth

of such half as compensation for his professional services in the event the action against The People of Puerto Rico were favorably decided. It is obvious that these averments could only be interpreted as a claim *by the Ramos-Buist brothers against the defendants,* to revendicate the title to one half of the mangrove lands, based on the fact that the sale was null and void for lack of consideration for the conveyance of that part of the mangrove lands. If there was absolute lack of consideration and consent, then the contract of sale embodied in the said deed would be rendered partially *nonexistent.* Such *nonexistence* would be perpetual and incurable and could not be the object of extinctive prescription. See *Guzmán* v. *Guzmán,* 78 P.R.R. 640 (1955); *González* v. *Fumero,* 38 P.R.R. 497 (1928); *Hernández* v. *Ayala,* 68 P.R.R. 883 (1948); *Cintrón* v. *Cintrón,* 70 P.R.R. 734 (1950). *Cf. Ruiz* v. *Ruiz,* 61 P.R.R. 794 (1943); *Ramírez* v. *Ramírez,* 65 P.R.R. 510 (1946); and *Heirs of Marrero* v. *Santiago,* 74 P.R.R. 763 (1953); I-II Castán, *Derecho Civil Español,* 684–89 (9th ed. 1955). But such action would correspond only to the Ramos-Buist brothers who, according to the aforementioned averments, were the owners of the property before the contract of sale was executed. This is confirmed by the averment that one half of the mangrove lands *remained always the property and full dominion of the Ramos-Buist brothers* because of the lack of consideration. Although it is also alleged that the latter "acknowledged to their attorney, Manuel F. Rossy, one sixth of such half as compensation for services, *subject to the condition that the action involving the ownership of the mangrove lands against The People of Puerto Rico be finally decided in favor of Lloréns-Torres,*" this does not give any real right to Rossy to bring an action against the defendants, predicated on the alleged nonexistence of the sale which the Ramos-Buist brothers made to Lloréns-Torres by public deed No. 42 of October 29, 1919.

For the reasons stated, the writ will be quashed insofar as the order of the lower court held that the first, third, and fourth causes of action alleged in the complaint had prescribed; the said order will be set aside insofar as it ordered the elimination of the second, third, and fourth paragraphs of the second cause of action; and judgment will be rendered holding that the second cause of action alleged by the intervener in his complaint had prescribed, and the case remanded for further proceedings consistent with this opinion.

Mr. Justice Pérez Pimentel did not participate herein.